SANDS v. E. S. GREELEY & CO.

(Circuit Court, S. D. New York. August 10, 1897.)

1. RECEIVERS — INSOLVENT CORPORATIONS — PRESENTATION OF CLAIMS BEFORE MASTER.
   Where abundant notice has been given to all creditors of the proceedings before the master, with full opportunity for all to appear, and the testimony has been taken and closed, and the master's report filed, the proceedings will not be reopened to allow dilatory creditors to appear for the first time, and make objections, and present testimony.

2. SAME—COMPENSATION OF ATTORNEYS.
   Where, pending a receivership, an investigation of the accounts of the corporation is conducted by an expert accountant retained and paid by cer-

tain creditors, which investigation results in the realization of a large sum for the receivership, the expense of such investigation will be charged against the fund and the disbursements of such creditors in that behalf repaid to them out of it.

**2. SAME—FOREIGN CORPORATIONS—TRANSMISSION OF RECEIVERSHIP FUNDS.**

In view of the settled practice in the Southern district of New York to pay resident creditors in full out of the funds realized in the state by ancillary receivers of a foreign corporation before transmitting any funds to the court of primary jurisdiction, it seems that the whole fund realized cannot be transmitted before making any distribution, so long as any of the resident creditors object thereto.

This was an auxiliary suit in equity, wherein receivers previously appointed in Connecticut for the Connecticut corporation of E. S. Greeley & Co. were also appointed by this court to take possession of its assets in this district. See 80 Fed. 195. The cause is now heard on a motion to confirm the report of the master, and to direct a receiver to transmit the balance of funds to the court of primary jurisdiction in Connecticut.

Frederic G. Dow, for the motion.
John L. Hill and W. B. Putney, opposed.

LACOMBE, Circuit Judge. This is a motion (a) to confirm the report of the master, and (b) to direct the receiver to transmit the balance of the funds in this jurisdiction to the court of primary jurisdiction in Connecticut for distribution. Upon the argument there was practically no objection to the report of the master. Since the argument a letter has been received from the attorney for several creditors, whose claims aggregate a little more than $3,000, asking to be allowed to appear, to file objections, and submit affidavits in opposition. This request is denied. Abundant notice was given to all creditors of the proceeding before the master, full opportunity was given for all to appear, the testimony has all been taken and closed, and the whole proceeding should not now be reopened to allow the dilatory creditors to delay the active ones by belated appearances, objections, and testimony. The report of the master is therefore confirmed, and the accounts of the receiver settled in conformity therewith. The allowances for receiver and his counsel are also settled, as suggested by the master, at $5,000 for each, respectively. Moreover, inasmuch as it appears that by reason of the investigation of the accounts of the insolvent corporation, which was conducted by an expert accountant retained and paid by certain creditors, a large sum of money ($20,000) was realized for the receivership, it is proper that the expense of such investigation should be borne by the fund, and not by individual creditors. The receiver will therefore repay to the attorneys for those creditors their disbursements for such accountant, which the master reports amount to $480.25. The motion to allow a further sum to said attorneys as counsel fee is denied. The allowance to attorneys who conducted the proceedings to recover the $20,000 must be taken as covering all services other than those of the accountant. When the accounts, etc., were sent to the master, he was instructed to report as to the claims of creditors. Hearings thereon have been had,

testimony taken, and proceedings closed.    Before the master had begun his investigations preliminary to a report upon said claims, suggestion was made that, with the assent of all, the balance of the funds here would be transmitted to the court of primary jurisdiction.    The master, therefore, with the approval of the court, did not increase his own charge by examining the testimony and reporting upon the validity of the several claims and the status of each, and which, if any, might be entitled to priority.    It was assumed by the court and the master, by receiver's counsel, and by the great bulk of the creditors, that such transfer of the funds would be assented to by all, and the affairs of the receivership be thereby promptly wound up.    Greatly to the surprise of every one, however, the creditor represented by Messrs. Putney & Bishop, whose claim amounts to some $2,300, opposed such transfer, and since the argument a further protest against said transfer has been received from Frederick M. Littlefield, Esq., representing several creditors whose claims aggregate some $3,300, and a like protest from counsel for the General Electric Company, a creditor to the amount of some $3,000. These opposing creditors are residents, and the ground of their objection is that under the practice in this district resident creditors are paid in full before any funds are sent out of the state, or distributed among nonresident creditors.    In view of this well-settled practice, it is difficult to see how the motion to transfer the fund can be granted over the opposition of resident creditors, even though they represent but a small fraction of the total indebtedness.    The motion, however, will not be now denied, but held under advisement until the next motion day (August 18th), in order to afford an opportunity for the persons interested to arrange for some concert of action.    It seems wiser to do so, since it is quite manifest from papers submitted that the objecting creditors do not thoroughly understand the situation, and suppose that, if the fund be not transferred, their claims will be forthwith paid in full.    It may be well to set forth that situation fully.

There is a considerable fund in the hands of receivers in Connecticut.    There is also nearly $80,000 within this jurisdiction (subject to reduction by payments for receiver, counsel, etc., already approved).    The claims of the "resident" creditors aggregate less than $50,000, and in this district the rule of distribution above referred to is well settled.    There are, however, some creditors, whose claims aggregate many thousands of dollars, who insist that, although actually nonresident, they are entitled to share on the same basis as the resident creditors.    The equity upon which this court protects resident creditors is found in the circumstance that the interference and intrusion of the federal court has deprived residents of the state of their remedies under state laws by attachment or similar process; that, had this court not interfered, such creditors would have secured their claims out of the tangible property of the insolvent within this jurisdiction, and on the strength of which they gave credit to the insolvent.    The nonresident creditors above referred to insist that under the laws of the state they, equally with residents, were entitled to the same remedies, and that, therefore, their exclusion

from resort to such remedies gives them the same equity upon distribution. This question has been twice raised in this district, but never decided. The creditors in both cases came together, and all concurred in asking to have the fund transferred to the court of primary jurisdiction. Should this unsettled question be decided adversely to the resident creditors, the amount of dividends to be received by them would be materially altered. Sufficient is at stake to induce the defeated party to take the case to the court of appeals, which has never considered the question.

There are, however, nonresident creditors, who were not, at the time receivers were appointed, in any position to avail themselves of remedy by attachment, etc., in the state courts. Their claims aggregate many thousand dollars. They insist that the rule of distribution followed in this district is inequitable, and not supported by precedent, and it is quite apparent that they have the means and the desire to secure a review of any decision of this court by the appellate tribunal. This question has never been presented to the court of appeals, and in the condition of the calendars many months must elapse before a decision in that court could be obtained. Moreover, the question seems never to have been squarely presented or flatly decided in the supreme court of the United States, and it is a question which must be continually presenting itself in nearly every federal district in the United States. Under these circumstances it is quite conceivable that the supreme court might grant a certiorari, or even that the court of appeals might certify the question to the supreme court. Should the case be carried so far, decision might not be reached for years. Meanwhile the fund would have to remain in the hands of the receiver, or in the treasury of the court. Wholly uninformed as to the creditors who proved their claims in the court of primary jurisdiction, and uncertain as to what basis of distribution might ultimately be decided upon by the court of last resort, it is difficult to see how even a partial dividend could be safely declared. It was undoubtedly an appreciation of these conditions which induced resident creditors, whose claims aggregate many times those of the opposing creditors, to agree to a disposition of the fund which might give them less than they would recover at the end of a prolonged litigation, but would give them whatever they were to receive with reasonable promptness. The agreement which it was supposed had been entered into by all would seem well calculated to commend itself to all interests, and therefore time will be given for a fuller discussion of the situation among the creditors, in the hope that some practical adjustment may be arrived at, which will not embarrass those whose claims are heavy, while those whose interests are small are busied settling academic questions for the benefit of counsel and the future illumination of courts.