## KIMBLE ET AL. *v.* BOARD OF COMMISSIONERS OF FRANKLIN COUNTY.

[No. 4,327.    Filed April 7, 1903.    Rehearing denied June 19, 1903.
Transfer denied February 3, 1904.]

COUNTIES.—*Action by Taxpayers for Recovery of Illegal Allowances.—
Expenses and Attorney's Fees.*—Defendants as citizens and taxpay-
ers prosecuted certain actions for the recovery, for the use and
benefit of the county, money paid by the county commissioners
upon alleged illegal claims, and, upon the recovery and collection
of the judgments, retained therefrom the expenses incurred, in-
cluding attorney's fees, and paid the balance to the county,
making a full report of their doings.    The board of commission-
ers accepted and retained the amount so paid, but refused to ap-
prove the report, and brought suit for the amount retained by
defendants.    *Held,* that defendants had the right to retain the
amount of the expenses out of the fund before parting with it,
each item being open to investigation and proof as to correctness.

From Fayette Circuit Court; *Claude Cambern,* Special
Judge.

Action by the Board of Commissioners of Franklin county against Henry C. Kimble and others. From a judgment in favor of plaintiff, defendants appeal. *Reversed.*

*G. C. Florea, L. L. Broaddus, D. W. McKee, J. I. Little* and *H. L. Frost,* for appellants.

*J. B. Kidney, Reuben Conner* and *Lon Conner,* for appellee.

BLACK, P. J.—In the complaint of the appellee against the appellants it was alleged that from December 1, 1895, until December 1, 1900, John J. Conrad, Conrad Strausberger, and Thomas M. Brown were the legally elected, qualified, and acting commissioners of Franklin county, and as such constituted the board of commissioners of that county; that during that period these commissioners, acting as such board, by mistake and through inadvertence, allowed and permitted to be paid from the public funds of that county certain claims in favor of themselves and others which were not legal claims against the county; that on December 6, 1900, the appellants instituted suit, as plaintiffs, for the use of the board of commissioners of Franklin county, Indiana, in the Franklin Circuit Court, against the above-named commissioners, for the recovery of the amount of money that had been so paid by that board on illegal claims; that on February 7, 1901, that suit resulted in the rendition therein by that court of judgment in favor of the appellants, for the use and benefit of said board, against the several defendants therein (against Conrad for $295.20, against Strausberger for $307.75, and against Brown for $217.20); that these judgments were paid by Conrad, Strausberger, and Brown, February 7, 1901, to the clerk of that court; and that March 1, 1901, the full amount of these judgments ($820.15), thus paid to the clerk, was paid over to the appellants. It was further alleged that from March 5, 1895, until March 5, 1899, one George R. King was the duly elected, qualified,

and acting auditor of Franklin county; that during that period the board of commissioners of that county, by mistake and through inadvertence, allowed in favor of King, as such auditor, certain illegal claims and allowances, the same being paid to him out of the funds of the county; that November 24, 1900, the appellants instituted suit in the Franklin Circuit Court against King for the recovery, for the use of the board of commissioners of Franklin county, of the amount of money that thus had been illegally paid to King; that February 7, 1901, this suit resulted in the rendition therein by that court of judgment for $456.24 against King in favor of the appellants, for the use and benefit of said board; that February 13, 1901, this judgment was paid by King to the clerk of that court; and that March 1, 1901, the amount thus paid to the clerk, $456.24, was by him paid over to the appellants.

It was further shown that King, before entering on his duties as auditor, executed his official bond, with certain named persons as his sureties thereon, which bond was duly approved by the board of county commissioners; that during his term of office, as above stated, said board, by mistake and inadvertence, made certain allowances in favor of King, as auditor, against the county, which were illegal and improper charges against the county, and which were paid to him as auditor out of the funds of the county; that November 24, 1900, the appellants instituted suit in the Franklin Circuit Court, in the name of the State of Indiana, on relation of the appellants, on said bond, against King and his sureties thereon, for the recovery, for the use of the board of commissioners of that county, of the amount of money that had thus been illegally paid to King as auditor; that February 7, 1901, this suit resulted in the rendition of judgment therein in that court in favor of the plaintiff therein, for the use and benefit of that board, against the defendants therein, for $663.02; that February 13, 1901, King paid to the clerk of that court the full

amount of this judgment—$663.02,—and on March 1, 1901, the clerk paid over to the appellants the amount so paid to him; making the total amount thus paid over to appellants $1,939.41. It was further alleged that of this amount the appellants paid to the county treasurer of that county $798.91, leaving in the hands of the appellants $1,140.50 of this money; that the board of commissioners and treasurer of said county have each requested and demanded of each of the appellants that they pay and turn over to the county treasurer of that county this balance of $1,140.50 remaining in their hands, but they have failed and refused to do so, and have retained the same, and claim that they have a legal right to retain the same, to the damage of the appellee in the sum of, etc. Prayer for judgment for the sum of, etc., and all other proper relief.

The complaint was filed in the Franklin Circuit Court, from which the venue was changed to the court below, in which a demurrer to the complaint, for want of sufficient facts, was overruled. The appellants answered in six paragraphs, a demurrer to each of which, except the first and second (afterward withdrawn) the court sustained.

In the third paragraph of answer the appellants alleged that they were *bona fide* residents, citizens, and taxpayers of Franklin county, and had been such for more than ten years last past; that for a number of years last past it was currently believed by a number of citizens and taxpayers of that county that the public moneys thereof were not being and had not been duly and legally kept, accounted for, and disbursed by the officers of the county having such funds in their control; that in 1898 a large number of such citizens and taxpayers, including the appellants, effected an organization known as the "Franklin County Taxpayers' League," the sole purpose and object of which was to discover and to cause to be collected and paid into the county treasury all moneys that had been illegally allowed by the county commissioners to themselves and other

officers and persons; that one John A. Colscott, a member of the organization, was its first treasurer and was selected as the representative of the organization in whose name should be brought all necessary actions to forward the purposes of the organization, and later the appellants were selected as such representatives of the organization for like purposes; that in 1898 the organization, by some of its members, petitioned the board of commissioners of the county, in regular session, to permit them to make an inspection of the fiscal books and records of the county for the purpose of ascertaining what moneys had been misappropriated, which request the commissioners refused; that they thereupon made a like request, for like purpose, of King, then the auditor, and of John W. Brockman, then the treasurer, of the county, both of which requests were refused by these officers; that, to ascertain the amount of the public funds misappropriated, and the persons to whom they had been illegally paid, and to discover and collect the same, it was necessary to employ attorneys and expert accountants, and to collect by subscription a fund for the association to defray the necessary expenses of discovering and procuring the collection of said public moneys, which work was done and which funds were collected, and which discovery and collection could not and would not have been accomplished without the organization of such association and the collection of said funds for the treasurer thereof, and without the labor incident thereto, which labor was performed by the appellants and other members of the association, and by persons employed by them; that the association, by its officers, employed Florea & Broaddus, attorneys, to procure such inspection, and to collect any moneys found misappropriated, in the event the board of commissioners of the county should refuse to do so, and also employed Koons & Johnson, expert accountants, to make inspection; that, being denied such inspection by said board and auditor and treasurer, said Colscott, acting

as a citizen and taxpayer of the county, on his own behalf and on behalf of said association, as well as on behalf of all other citizens and taxpayers of the county similarly affected, commenced two actions in the Franklin Circuit Court, in mandamus—one against the county auditor and one against the county treasurer—to compel an inspection of said public books and records, in which actions the venue was changed to the Union Circuit Court, in which court demurrers of the defendants to the complaints were sustained, and judgments were rendered against the relator, from which judgments he appealed to the Supreme Court, wherein the judgments were reversed; that the case against the treasurer is still pending in the Union Circuit Court, and the relator is taxed with costs in the sum of $25; that in June, 1900, after the judgments in the original mandamus actions were reversed, the auditor and treasurer agreed with the appellant to allow such inspection to proceed without awaiting further action in the Union Circuit Court, and that the same should be commenced by the accountants September 1, 1900; but on that day the board of county commissioners made an order directing the auditor and treasurer to refuse such inspection until a writ of mandate should be obtained in said causes in the Union Circuit Court, which order the auditor obeyed; that thereupon the appellants as citizens and taxpayers of the county, on their own behalf, as well as on behalf of said league, commenced a third action in mandamus against the auditor to secure an inspection, which resulted in a judgment granting the same; that this inspection was made by said accountants, and resulted in a report showing that said commissioners and auditor were indebted to the county on account of illegal allowances made to them by said board in the respective amounts for which the appellants recovered judgments as alleged in the appellee's complaint; that before commencing said actions in which said judgments were recovered, as alleged in appellee's complaint herein,

the appellant demanded of said board of commissioners that it cause suits to be instituted against said King, auditor, to recover said moneys, which demand the board refused, and also demanded of said commissioners, individually (Conrad, Strausberger, and Brown), they being still the incumbents of said offices, that they pay the county the amount of said illegal allowances drawn by each of them from the county, which demand they each refused; that thereupon the appellants, as taxpayers and citizens of the county, acting for themselves and said league and all other citizens and taxpayers who might desire to join in the suits, commenced and prosecuted to judgments in the Franklin Circuit Court, for the use of Franklin county, the several suits as alleged in appellee's complaint, each of said suits being for the collection of illegal claims allowed and paid by the county of Franklin more than sixty days prior to the commencement of said suits, and prior to March 3, 1899, to wit, one suit and judgment against John J. Conrad, commissioner, for $295.20; one suit and judgment against Conrad Strausberger, commissioner, for $307.75; one suit and judgment against Thomas M. Brown, commissioner, for $217.20; one suit and judgment against George R. King, auditor, for $456.24; and one suit and judgment against King, auditor, and his bondsmen, for $663.02—total $1,939.41. It was alleged, that immediately after these judgments were entered of record, Florea & Broaddus, attorneys for the plaintiff in said mandamus suits and said suits for collection, entered of record on the judgments notices of their intention to hold liens for attorney's fees, respectively, in each of said judgments, said liens aggregating in all of the judgments $429.

It was further alleged that said accountants reported the collected and unreported auditor's costs due from King, auditor, of which he, as a result of such discovery, and before said suits were filed, paid into the county treasury $172.45; also said accountants discovered that

one Joseph Ostman, an ex-commissioner of that county, was indebted to the county for illegal allowances made to him as such commissioner in the sum of $61.51, which he, on demand of the appellants, paid to the treasurer of the county; that March 1, 1901, the appellants received from the clerk of the Franklin Circuit Court the amount of all said judgments, $1,939.41, subject to said attorney's liens thereon, and under express agreement with said attorneys to pay said liens out of said moneys, which they did thereafter pay, to the amount of $400, in full satisfaction of the liens; that in the organization and operation of said league, and in the employment of said attorneys and accountants, and procuring the same, and for costs paid in and about said suits, the appellants and their predecessors, as the representatives of the league, incurred, or incurred and paid, from the moneys of the league, together with said $400 attorney's fees paid out of the judgment collected, for the sole account of said investigation, discovery, and collection of said moneys due said county, certain amounts, which are set forth by items in the answer, all amounting to $1,140.50. It was alleged that all these expenses and payments were reasonable in amount, and were each absolutely necessary to the successful organization of said taxpayers' association, and the discovery and collection of said moneys, without which association, and the expenses incident thereto, said discovery and collection could not and would not have been made; that the appellants, acting individually, could not and would not have assumed the burden of said discovery and collections, and that all of the association's funds were exhausted when said judgments were recovered, and it had no funds out of which its said attorney's fees could be paid, other than from the moneys collected on the judgments; that the appellants and their predecessors in the work of said taxpayers' association, and in making said dis-

coveries and collections, acted only as parties (trustees) for said county and for said association, chargeable with the duty of accounting to said county for the funds collected, and to the association for the proper and legal retention of all moneys expended for the association.

It was next alleged that at the March term, 1901, of the commissioners' court of Franklin county, the appellants submitted a full report of their doings as such trustees to the board of commissioners, and paid to said county $798.91, being all of said collections except the expenses aforesaid, which expenses they retained for the use of the association, whose money it is, and on which they claim and hold an equitable lien and right of retention by reason of the facts aforesaid; that the county accepted and retains said sum of $798.91 paid it by the appellants, but the board of commissioners refused to receive and approve said report; that the business of said association in relation to said collections and funds is still unfinished, and it is the purpose of the appellants that when said business shall be completed, and there shall be found any of the said county money in appellants' hands, to account for and pay the same to the county, of which purpose the appellee was notified before the commencement of this action; wherefore, etc.

The other paragraphs of answer proceed upon the same theory as the third paragraph; each of the other paragraphs being directed to particular portions of the fund retained by the appellants, and each of them relating to expenses incurred in the discovery and collection of the amounts misappropriated from the county funds.

The board of county commissioners can not bind the county by allowing and ordering payment of an unlawful claim. *Board, etc., v. Heaston,* 144 Ind. 583, 55 Am. St. 192. In that case it was held that an action would lie in favor of the county against the county auditor

to recover money which had been allowed by the board of county commissioners, and paid to him upon an unlawful claim. See, also, *Board, etc.,* v. *Buchanan,* 21 Ind. App. 178.

Money collected by taxation and misappropriated by the officials of a public corporation can not be said to be the money of the taxpayers, but must be regarded as the money of the corporation whose officers have misappropriated it. Each taxpayer has an indirect interest in the money in common with all the other taxpaying inhabitants. He can not recover for himself the money or any portion of it; nor can he recover damages for himself from the corporation for the misappropriation of the money. It is certain that a taxpayer has such an interest in the proceeds of taxation that he may demand the aid of the courts to prevent or to redress the wrongful or illegal use of such proceeds by public officers.

In *Crampton* v. *Zabriskie,* 101 U. S. 601, 25 L. Ed. 1070, it was said: "Of the right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county or the illegal creation of a debt which they in common with other property holders of the county may otherwise be compelled to pay, there is at this day no serious question. * * * Certainly, in the absence of legislation restricting the right to interfere in such cases to public officers of the state or county, there would seem to be no substantial reason why a bill by or on behalf of individual taxpayers should not be entertained to prevent the misuse of corporate powers."

The doctrine is well established in equity, in the case of private corporations, that a stockholder or stockholders, either individually or suing on behalf of themselves and all others similarly situate, as the ultimate beneficiaries (the corporation itself being the immediate *cestui que*

*trust* under the directors), may maintain an action to obtain relief against wrongful dealings with the corporate property by directors and officers, where the corporation refuses to institute or promote such a suit; the cause of action being in its nature one in behalf of the corporation against such wrongdoers, and the corporation itself being made a party to the suit. Pomeroy, Eq. Jurisp. (2d ed.), §1095; *Grant* v. *Lookout Mountain Co.,* 93 Tenn. 691, 28 S. W. 90, 27 L. R. A. 98.

Judge Dillon, in his work on Municipal Corporations (4th ed.), §915, takes the view that the same rights belong to taxpayers, not merely in the prevention, but also in the redress of their wrongs, arising from illegal disposition of the funds of public corporations, as those possessed by stockholders in private corporations. He says that in private corporations "the ultimate *cestuis que trust* are the stockholders. In municipal corporations the *cestuis que trust* are in a substantial sense the inhabitants embraced within their limits. In each case the corporation or the governing body is a trustee. If the governing body of a private corporation is acting *ultra vires* or fraudulently, the corporation is ordinarily the proper party to prevent or redress the wrong by appropriate action or suit in the name of the corporation. But if the directors will not bring such an action, our jurisprudence is not so defective as to leave creditors or shareholders remediless, and either creditors or shareholders may institute suits to protect their respective rights, making the corporation and the directors defendants. This is a necessary and wholesome doctrine. Why should a different rule apply to a municipal corporation? If the property or funds of such a corporation be illegally or wrongfully interfered with, or its powers be misused, ordinarily the action to prevent or redress the wrong should be brought by and in the name of the corporation. But if the officers of

the corporation are parties to the wrong, or if they will not discharge their duty, why may not any inhabitant, and particularly any taxable inhabitant, be allowed to maintain in behalf of all similarly situated a class suit to prevent or void the illegal or wrongful act? Such a right is essentially necessary in the case of municipal and public corporations, and if it be denied to exist, they are liable to be plundered, and the taxpayers and property owners on whom the loss will eventually fall are without effectual remedy."

Concerning the right of taxpayers to seek relief in equity by injunction to prevent municipal corporations and their officers from unlawful appropriations of public funds, there is no doubt. Such remedy is one frequently applied. *Harney* v. *Indianapolis, etc., R. Co.,* 32 Ind. 244.

"Suits by taxpayers against towns and their officers, to prevent or remedy misappropriations of town funds, are not only allowed by statute, but it is the prevailing doctrine in America that taxpayers may maintain them, in the absence of statute. Their relations to the municipality are analogous to those of stockholders to a private corporation." *Russell* v. *Tate,* 52 Ark. 541, 13 S. W. 130, 7 L. R. A. 180, 20 Am. St. 193. It is further said in that case that there is no foundation in the authorities for the claim that the power of chancery is only injunctive; that chancery has ample power to prevent further wrong, and to require reparation for that which has been done.

In *State, ex rel.,* v. *King,* 154 Ind. 621, and *State, ex rel.,* v. *Brockman,* 154 Ind. 695, the court upheld the right of the Mr. Colscott, mentioned in the answer now before us, to examine the public records of the county auditor and the county treasurer, to discover the condition of the public revenue, and to ascertain if the affairs of the county had been honestly and faithfully administered

by the public officials.  The county was spoken of as an involuntary public corporation, the people residing therein being virtually the incorporators; and it was said to be a well recognized rule of the law that a corporator of a municipal corporation has the right to have a general inspection of the public records and documents of such corporation.

It is a general rule, without doubt, that trustees and others acting in a fiduciary capacity are entitled to reasonable allowances for costs and expenses incurred in the course of the performance of their duties, out of a fund which has been secured or protected by their efforts. *Woodruff* v. *New York, etc., R. Co.,* 129 N. Y. 27, 29 N. E. 251.

In *Trustees* v. *Greenough,* 105 U. S. 527, 26 L. Ed. 1157, it was said to be a general principle that a trust estate must bear the expense of its administration, and that where one having a common interest with others in a trust fund takes, at his own expense, proper proceedings to save it from destruction or to restore it to the purposes of the trust, he is entitled to reimbursement, either out of the fund itself, or by a proportional contribution from those who accept the benefits of his efforts.  See *Central R., etc., Co.* v. *Pettus,* 113 U. S. 116, 123, 5 Sup. Ct. 387, 28 L. Ed. 915.

In *Fox* v. *Hale, etc., Min. Co.,* 108 Cal. 475, 41 Pac. 328, it was said:  "The action was not prosecuted by the plaintiff in his own right or for his own exclusive benefit.  He sued in behalf of the corporation to recover a fund in which others were equally interested, and the judgment in his favor was for the use and benefit of the corporation.  He was therefore not entitled to receive the amount of the judgment himself, but clearly was entitled to an allowance out of the moneys collected of his reasonable expenses, including counsel fees."    See, also, Cook, Corp. (5th ed.), §879.

In *Sands* v. *Greeley & Co.,* 83 Fed. 772, where, pending a receivership, an investigation of the accounts of the corporation was conducted by an expert accountant retained and paid by certain creditors, which investigation resulted in the realization of a large sum for the receivership, it was held that the expense of such investigation would be charged against the fund, and the disbursements of such creditors in that behalf would be paid to them out of it.

Our statute of 1897 (Acts 1897, p. 187, §7848c Burns 1901), providing for the prosecution, for the use and benefit of the county by any citizen and taxpayer of the county, of a suit for the recovery of an illegal, unwarranted, or unauthorized allowance made by the county board, and providing for the making, in such suit, of a reasonable allowance to the person bringing the suit, to reimburse him for the trouble had and expense incurred in prosecuting such suit, including reasonable attorney's fees, to be paid only out of such money that may be recovered, authorizes such suit "at any time within sixty days after the allowance of any claim." Section 5594y1 Burns 1901 makes provision for suit, on the relation of a citizen and taxpayer, against officers unlawfully disbursing county funds, and persons receiving them, and provision is made for the recovery therein, in addition to the amount so paid out of the treasury and interest, of just attorney's fees and necessary expenses of the plaintiff; but such suit is so authorized "in any case where money is paid out of the county treasury contrary to the provisions of this act," which is an act of April 27, 1899, concerning county councils. Neither of these statutes could be regarded as applicable to the case at bar, and we have no occasion to seek to construe them.

Without pausing to determine whether either of these statutes provides or attempts to provide a broader remedy

than that afforded in equity, as indicated above, we are of the opinion that they can not properly be regarded as intended by the legislature to abrogate the doctrine of equity affording relief at the instance of taxpayers under such a state of facts as is shown by the answer of the appellants, or as intended to deprive such successful instigators of the suits of remuneration out of the recovered fund for their reasonable expenses in the premises, including reasonable attorney's fees. One seeking relief pursuant to the statute would bring himself within the terms or meaning thereof, and would not expect reimbursement otherwise than as thereby provided; but there is not in either of the statutes any language expressly or by necessary implication abrogating the general doctrine of equity applicable to situations such as that here shown by the pleadings.

It does not appear from the answer that the county, in its corporate name, was made a party to the suits for the recovery of the moneys illegally appropriated; but the county has accepted and appropriated a portion of the avails of those suits, and in the case before us is claiming the remainder of such proceeds. Under the mode of proceeding actually pursued, all the proceeds of the various judgments came into the possession of the appellants. It was the money of the county, and the appellants held it as such. Their actual situation after receiving the moneys was that of persons holding in a fiduciary capacity a fund, to the creation or recovery of which they had contributed by the discoveries and suits instigated by them, as a part of many ultimate *cestuis que trust,* in behalf of all of whom they proceeded. They made report to the county for which they held the fund, claiming reimbursement from it, not for their individual services or "trouble," but for their actual, reasonable, and necessary expenses in the recovery of the fund. The county

was not then, and is not now, concluded by that report. All the items of expense reported were open to investigation; but the board of commissioners, accepting a portion of the moneys, rejected the account, and brought this action for the recovery of all the remainder of the moneys collected by the appellants. The complaint showed the recovery of the moneys, and the retention of a portion thereof, without indicating any expense on the part of the appellants, the burden of pleading and proving which was on them. The complaint therefore showed *prima facie* a cause of action. The answer alleged that all the expenses stated were reasonable, and were necessarily incurred in the recovery of the moneys. We think the appellants had the right to retain the amount of such expenses out of the fund before parting with it, and that the answers were sufficient on demurrer. The appellee is not concluded as to any portion of the alleged expenses. Each item is open to investigation, and only such are allowable as shall be proved to be reasonable and necessary. This is true of the attorney's fees, as well as of the other expenses. The attorneys had a statutory right to enter notice of intention to hold a lien for their fees; but the appellants can claim as against the appellee only such amount as may be proved to be reasonable. There has been no prior opportunity for the litigation of these expenses as against the appellee, and it is to be afforded such opportunity by contesting the matters set up in answer by the appellants.

Judgment reversed, with instruction to overrule the demurrers to the answers.