[S. F. No. 11781. In Bank.—August 31, 1928.]

COUNTY OF TULARE, Respondent, v. CITY OF DINUBA (a Municipal Corporation) et al., Appellants.

J. E. Greene, City Attorney, W. W. Middlecoff, M. E. Powers, Thos. C. Ridgeway, H. E. Schmidt and H. K. Landram for Appellants.

LeRoy McCormick, Frank Landram and Sherrill Halbert for Respondent.

SEAWELL, J.—This appeal was taken from that part of a judgment entered in the superior court of the county of Fresno, to which court the questions involved in this appeal had been transferred by the superior court of the County of Tulare for decision, wherein said superior court of the county of Fresno refused to tax as costs of suit an attorney fee in favor of W. W. Middlecoff, Esq., in the sum of $11,980.47 against the share of a fund allocated to the County of Tulare and paid into court by the defendant San Joaquin Light and Power Corporation for the use and benefit of said county, on account of an action brought in the superior court of the county of Merced in the name of the counties of Kings, Merced, and Madera and several municipalities situate within said counties, or within counties contiguous to one or more of said counties, to compel

defendant San Joaquin Light and Power Corporation, a public utility engaged in the business of furnishing and transmitting to the public electricity for purposes of light, heat, and power by means of poles and wires placed upon public highways in the counties and municipalities herein named, to account to said counties and municipalities for the grant and use of said franchise privileges as provided by an act commonly designated the "Broughton Act," entitled "An act providing for the sale of street railroad and other franchises in counties and municipalities, and providing conditions for the granting of such franchises," etc. (Chap. dlxxviii, Stats. 1905, p. 777.) The refusal of the court to set aside and vacate that portion of said judgment decreeing that attorney Middlecoff was not entitled to the allowance of an attorney's fee from the fund allocated to the County of Tulare, and its further refusal to enter a decree upon the findings made by the court that he was entitled to said attorney's fee, is made an additional ground of appeal.

Appellant Middlecoff in his individual capacity and the City of Dinuba gave notice of intention to move for a new trial and also notice of intention to move for an order vacating the judgment as entered and for the entry of a different judgment on the findings. No other parties were joined with Mr. Middlecoff and said city in either notice of motion. On August 20, 1925, the motion for a new trial was withdrawn and dismissed. On the same day, August 20, 1925, the motion to vacate said judgment and enter a different judgment was denied. On August 28, 1925, W. W. Middlecoff, in his individual capacity and as the attorney for said City of Dinuba, gave notice of appeal and a notice to the clerk to prepare the transcript on appeal as provided by sections 953a, 953b, and 953c of the Code of Civil Procedure. In the notice of appeal and the notice to the clerk to prepare the transcript, other parties, consisting of counties and cities, interested in the main question of an accounting to them under the interpretation given to said act in *County of Tulare* v. *City of Dinuba*, 188 Cal. 664 [206 Pac. 983], were also joined as appellants. ▇ It is perfectly obvious from the records before us that none of the other parties to the action except Mr. Middlecoff, the County of Tulare, and the City of Dinuba were concerned or interested in the question as to what portion, if any, of the fund allocated to the

County of Tulare properly belonged to the City of Dinuba, or whether Middlecoff was legally entitled to a fee to be paid out of the fund allocated to said County of Tulare. The amounts in which all of the appellants, except the City of Dinuba, were indebted to Middlecoff by their respective contracts of employment had been definitely fixed by a decree of court from which no appeal was taken, and none of said appellants, but the City of Dinuba and Middlecoff, could in anywise be benefited or injured by the result of this appeal. The presence of said parties to the record has no bearing whatever on the merits of the question presented for decision, and they will receive no further consideration as appellants.

The cause comes to us on a petition for hearing after decision by the district court of appeal, first appellate district, division two, Koford, P. J., writing the opinion. The order of transfer to this court was made mainly because of appellants' challenge to that portion of the opinion which expressed doubt as to "whether the principles of the equitable rule contended for can be applied to any county of the state of California where the Political Code has made a complete scheme providing when and by whom the county shall be represented. The scheme includes only the district attorneys, attorney-general and special counsel employed in a designated way in certain cases." While it is true that this question was raised by counsel and responded to by the court as above set out, we nevertheless do not regard a decision on that single point to be absolutely necessary to an affirmance of the judgment, which will abundantly appear from our subsequent brief *résumé* of the early actions instituted by the County of Tulare against San Joaquin Light and Power Corporation, and its continuous efforts to make effective the Broughton Act and compel the public utility corporations of the state doing business within its borders to comply with its provisions, considered with respect to the part taken in the later stages of said litigation by Mr. Middlecoff. There is, however, much force in the observation made by the district court of appeal. Appellants have cited occasional cases from other jurisdictions wherein attorneys' fees were taxed as costs of suit against a common fund reduced to a judgment as the result of an action brought by a private citizen on behalf of and for the benefit

of a county, municipality or other branch of government, as authorities which should rule the decision in the instant case. We think none of the cases cited by appellants can be applied to governmental affairs in this state in view of the very complete system which prevails in this state in the form of township and county government acts and general laws prescribing the powers and duties of state, township, and county officers, and which laws reserve to certain other public officers and boards supervisory control of the acts and conduct of its said ministerial and administrative officers in the performance of official duties. ▮ The power of the court to make an award or allocation of a part of a public fund paid into court for the use and benefit of a political subdivision of the state, such as a county, without the consent of and in the absence of any contractual agreement on the part of said county through its authorized agents to do so, and which county is by statute expressly provided with a law department charged with the exclusive duty of prosecuting and defending against all actions that should be brought in its behalf or defended against, subject only to the control and direction of its governing board and the supervisory control of the attorney-general of the state, may not only be doubted, but we may take a forward step into the field of assurance and say that an attempt to exercise such power in the absence of an authorizing statute or some exceptional and pressing equitable reason for so doing, which does not appear in the instant case, would be to violate the implied if not express language, meaning and intent of the act creating our system or scheme of county and township government and general administrative laws in accordance with a policy that was adopted and which has been continuously followed since the adoption of our present constitution of 1879.

Section 4000 of the Political Code provides: "Every county is a body corporate and politic and as such has the powers specified in this title [title II] and such other powers as are necessarily implied from those expressed." Section 4001: "Their powers can only be exercised by the board of supervisors, or by agents and officers acting under their authority, or authority of law." A county has power to sue and be sued. (Sec. 4003, subd. 1, Pol. Code.) Section 4041, subdivision 16, of said code, provides that the

board of supervisors has jurisdiction and power "to direct and control the prosecution and defense of all suits to which the county is a party and by a two-thirds vote of all the members, may employ counsel to assist the district attorney in conducting the same."

The general permanent powers of the board of super visors are many and plenary in the exercise of its exclusive executive and legislative jurisdiction and power. It is given power to supervise the official conduct of all county officers and it is held to strict accounting in its duty of conserving and caring for the revenues and guarding the rights of the county. It is made the duty of the judge of the superior court of each county annually to call the attention of the grand jury to the provisions of law prescribing the duties of boards of supervisors and all county officers charged with protecting the interests and rights of the people to ascertain by a careful and diligent investigation whether the provisions of the law have been complied with and to note the result of the same in their report. (Sec. 4151, Pol. Code.)

Turning to the duties of district attorneys, we find by section 4153 and its subdivisions that the district attorney is the public prosecutor and must attend the courts and conduct on behalf of the people all prosecutions for public offenses and when not engaged in criminal proceedings in the superior court or in civil cases on behalf of the people must attend upon the magistrates when requested by them and perform other specific duties.

Subdivision 3, said section 4153, provides that the district attorney must "draw all indictments and informations, defend all suits brought in his county against the state or his county wherever brought, prosecute all recognizances forfeited in the courts of record, and all actions for the recovery of debts, fines, penalties and forfeitures accruing to the state or, his county." He is expressly made the legal adviser of the board of supervisors. (Sec. 4154, Pol. Code.)

By section 470, subdivision 5 of the Political Code, it is made the duty of the attorney-general "to exercise supervisory powers over district attorneys in all matters pertaining to the duties of their offices and perform any of such duties when, in his judgment, such action is advisable, and, from time to time, require of them reports as to the condition of public business intrusted to their charge; . . . "

█ We have set out the foregoing sections of the Political Code as illustrative of the complete system of state, county, and township government under which the public business of the state is conducted. The counties are governmental agencies of the state and the property entrusted to their governmental management is public property. (*Reclamation District* v. *Superior Court,* 171 Cal. 672 [154 Pac. 845].) The statute casts upon boards of supervisors and district attorneys the duty of protecting the public's interests and to the end that there may not be a failure of performance of said duties the law subjects their official acts and duties to review, inspection, and supervision by still higher powers. Under such a scheme as is provided by our system for the transaction of public business the *necessity* for a private citizen or another public subdivision of the state of equal rank, such as a county, to bring a suit in order to preserve the rights of another county or to save it from a loss, such as would justify the allowance of attorneys' fees against the latter, could scarcely arise. Certainly not in a case such as this in which the county sought to be charged had filed a suit prior in time and designed to accomplish the same general purpose as the suit last filed and which was pending, and had refused before the later case was filed to employ the attorney here seeking to charge it with an attorney's fee. In the absence of a contrary showing it must be presumed that official duty will be performed.

The authorities cited by appellants do not deal with a system of county government such as we have briefly outlined. Doubtless no such complete systems existed in the jurisdictions where the actions arose. The cases relied upon by appellants present three conditions upon which an attorney's fee has been allowed to the party instituting and prosecuting to a finality the suit. One is where an action is brought by a party who has created or discovered a fund which inures to the common benefit of several persons and has borne the expense of the litigation that established the rights of all. In the instant case appellant Middlecoff neither created nor discovered the fund in suit, as will appear from the facts hereafter stated. The second class of cases turns upon questions of fraud, corruption, or the wilful neglect of public officers, such as ruled *State* v. *Andrews,* 131 Tenn. 554 [175 S. W. 563], a case cited by appellants. In that

case Judge Dillon is quoted as announcing the equitable rule that when a municipal or other public corporation has a cause of action which should be prosecuted for its use, whether that cause of action be legal or equitable, and its governing body or other proper officers *wrongfully neglect* or *wrongfully refuse* to commence an action thereon, a taxpayer may, on behalf of himself and all others similarly situated, commence an action in equity to redress the wrong to the corporation, making the corporation a defendant as trustee for all its members. In the Andrews case the municipal authorities wilfully refused to take any steps to collect a tax which the supreme court of Tennessee had held to be valid. A taxpayer by writ of mandate caused the taxes to be collected and he was allowed his expenses and counsel fees. Doubtless the writ of mandate was the only remedy available to compel a compliance with the law, as the court in its opinion remarked that but for the activity of the taxpayer the money would not have reached the treasury. A similar situation did not exist as to the County of Tulare. In the instant case neither wilful neglect, fraud, nor corruption can be urged as a reason for the institution of suits in the county of Merced which involved the same questions in the large sense that were involved in the causes pending in the County of Tulare.

The third class of cases in which attorneys' fees have been allowed to a party who institutes and prosecutes a cause to judgment at his own expense for the benefit of a municipality and its inhabitants are those in which there is express statutory authority for such allowance. *Kimble* v. *Board of Commissioners of Franklin County*, 32 Ind. App. 377 [66 N. E. 1023], a case cited and seemingly relied upon by appellants, cannot be regarded as authority on any principle of the case. A few cases in bankruptcy are also cited, but there is no analogy between those cases and the case made by the record before us.

The case of *Fox* v. *Hale & Norcross S. M. Co.*, 108 Cal. 475 [41 Pac. 328], is relied upon to support the contention that a court of equity can compel the payment of attorney's fees out of a common fund collected and paid into court in an action brought by one on behalf of others. The question of the allowance of an attorney's fee was dismissed from a consideration of the case upon appeal. This court in pass-

ing upon the questions before it said that the receiver was entitled to an allowance out of the moneys collected of his reasonable expenses, including counsel fees. The receiver was an *officer of the court*. The main case is reported in the same volume at page 369. It was an action involving the corrupt and fraudulent acts of the board of directors of a mining corporation engaged in a conspiracy to defraud the corporation and as there were no officers authorized to maintain the action willing to bring it, suit was commenced by a stockholder. The corporation was a private corporation and not a county or municipality, which can act only through its governing board and in strict compliance with the prescribed provisions of law. Fraud, corruption, and conspiracy were the gravamen of the charge made against the governing body of the private corporation by a defrauded stockholder. His action was sustained after long, vexatious, and expensive litigation. The costs properly incurred by him were allowed. In the more recent case of *Los Angeles Trust & Savings Bank, etc.,* v. *Ward,* 197 Cal. 103 [239 Pac. 847], supported by an array of authorities, the rule is announced that attorney's fees are not recoverable by a successful party to an action, either at law or in equity, except in the instances where they are expressly allowed by statute. It is further noted in 7 Cal. Jur. 287, that in an action for the preservation or distribution of a fund where all the parties have a common interest courts of equity in some cases, where justice requires it, allow attorney's fees as a part of the relief granted.

This brings us to a consideration of attorney Middlecoff's claim as urged upon solely equitable grounds. The Broughton Act was approved March 22, 1905. By its provisions no percentage of the total gross receipts of utility corporations was to be paid for the first five years succeeding the date of each franchise granted by the respective counties, but thereafter said percentage became payable annually. On May 4, 1914, the County of Tulare commenced an action in the superior court of that county against the City of Dinuba, a municipality situate within said county and which claimed a portion of the fund sued for, and the San Joaquin Light and Power Corporation. The purpose of the action was to bring to the treasury of said county the gross receipts due it as provided by the

Broughton Act. The nature of the action as against the utility corporation was for an accounting and for general relief. Frank Lamberson and James M. Burk, respectively district attorney and deputy district attorney of said county, were the attorneys for plaintiff county. This was the first action commenced and the only action ever carried forward to a finality by any of the group of counties or municipalities affected by the Broughton Act. The case was delayed in the trial court on account of an order made reopening the cause for the taking of further evidence and because of the importance of the cause and the difficulty encountered in interpreting the exact meaning and scope of the Broughton Act. Judgment was rendered in favor of the County of Tulare and against the City of Dinuba, and said utility corporation. In 1917 another case was filed by Mr. Lamberson and his deputy to preserve the rights of the County of Tulare to accruing annual gross receipts arising under said Broughton Act. A third suit was filed for the same reasons in 1919 by Mr. Scott, district attorney and successor in office to Mr. Lamberson. Mr. Middlecoff appeared in this action as deputy district attorney.

Upon coming into the office of district attorney in January, 1919, as the successor of Mr. Lamberson, Mr. Scott appointed his law associates or copartners, Mr. Middlecoff and Mr. I. H. Ham, as deputy district attorneys. The trial of the first case, begun under the *régime* of Mr. Lamberson, was brought to a conclusion and judgment went for plaintiff and against both defendants. An appeal was taken by the utility corporation to this court. Mr. Middlecoff, as deputy district attorney, was the principal attorney in said cause, as well as upon appeal, having at all times the advice and assistance of his superior and his fellow deputy, Mr. Ham. Upon appeal the cause of *County of Tulare* v. *City of Dinuba and San Joaquin Light & Power Corporation*, 188 Cal. 664 [206 Pac. 983], was reversed, but this court sustained the act against the assaults made on constitutional grounds and against the claim that it was void on grounds of uncertainty and that it was not capable of practical application.

Mr. Middlecoff served as deputy district attorney of Tulare County commencing with January, 1919, to December 31, 1921, when he resigned. At the time of his resignation

the test case, reported in 188 Cal. at page 664, had not been finally submitted to this court. He was upon his resignation immediately employed by the County of Tulare as its special counsel in conducting and presenting said cause to this court at a salary of $250 per month. On March 16, 1922, he was dismissed from employment by said County of Tulare. On May 4, 1922, this court filed its opinion in said cause reported in 188 Cal. 664 [206 Pac. 983], entitled *County of Tulare* v. *City of Dinuba, Defendant; San Joaquin Light & Power Corporation, Defendant and Appellant.* This court in that case went to great pains to point out a plan by which the Broughton Act could be applied in a practical way to a difficult situation. In so doing it advised that all counties and municipalities claiming the benefits of said act should join in one action or be made party defendants. The important question decided was that the two per cent charge on the gross receipts for the use of the highway was neither a tax nor a license, but a toll which the holder of the franchise undertakes to pay for the privilege of using the highway, and, therefore, it was not repealed by the provisions of section 14, article XIII, of the constitution, adopted since the Broughton Act.

The above decision settled every material question raised against the validity of the act and it became the law of the case. There was nothing further to be done but to determine a just basis on which the gross revenues should be computed. The *remittitur* from the supreme court was filed June 7, 1922. Mr. Middlecoff applied to the County of Tulare to be specially employed to prosecute its claim, but his services were rejected. With unusual expedition he negotiated contracts with several counties and municipalities to represent them specially in prosecuting their claims against the defendant San Joaquin Light and Power Corporation for an accounting in accordance with the plan announced by this court. On June 19, 1922, eleven days after the filing of the *remittitur*, he filed suit in the county of Merced in which he named Kings, Merced, and Madera counties and the City of Dinuba plaintiffs, "suing for the benefit of all counties and municipalities interested in monies due from defendant under the Broughton Act franchises," and prayed for an accounting as outlined in the Tulare County decision. The complaint seems to have been amended so

as to include in its caption the county of Mariposa and a number of municipalities situate in Tulare, Kern, and other counties. The county of Kern afterward came in as an intervener. Nowhere did the appellant assume directly to represent Tulare County. He alleged that Tulare County was beneficially interested in the litigation, but that is all. Defendant's demurrer to the complaint was overruled and it waived its right to answer, as it had protected itself by stipulation as to the rule that would be observed in fixing its liability.

Many of the municipalities named as beneficially interested in the result of the suit which were not originally represented by appellant afterward entered into contracts of employment with Mr. Middlecoff, agreeing to pay him such fee as the court might allow. Tulare County, which had initiated the suit that settled the law of the case and which had two other suits as well as the original proceeding pending in its superior court, had had but eleven days from the filing of the *remittitur* to determine its future course at the time Mr. Middlecoff filed the Merced County action. Tulare County's district attorney and Mr. Lamberson, the former district attorney of Tulare County, who was employed by said county as special counsel to assist in the prosecution of said cases, found themselves embarrassed by the recent suit filed in Merced County, which was framed for the accomplishment of the same object which Tulare County for a number of years had been endeavoring to accomplish at its own cost and which it would doubtless have accomplished but for the interference with its plan by the filing of the Merced County case. A simple amendment of the Tulare County complaint, bringing in, either as plaintiffs or defendants, all the counties and cities interested in the subject matter, as pointed out by this court upon the appeal of the Tulare County case, which course would doubtless have been adopted but for the action filed in Merced County, would have rendered it unnecessary to bring a new action in the latter county and the contention as to the allowance of attorney's fees against Tulare County would not have arisen. Under such procedure it is quite likely that the other counties and cities would not have deemed it necessary to employ special counsel for the performance of a service which the statute of the state imposed upon its law

officers. The County of Tulare refused to join in the Merced County suit at the request of Mr. Middlecoff. Finally he caused it to be served with summons and in obedience to that command said county came in as an intervener. After considerable negotiations the utility corporation paid into court a fund allocated to the several counties and cities interested, which was accepted by all as a fair settlement of the controversy.

The complaint in intervention by the County of Tulare was filed by the district attorney and its special counsel, Frank Lamberson, January 3, 1924. It prayed for a judgment commanding said utility corporation to pay into court for the benefit of Tulare County and all other counties and municipalities the gross receipts found to be due each with interest at the rate of seven per cent per annum, for costs and general relief. By a stipulation dated February 13, 1924, and filed in court March 24, 1924, the Merced County action as to the County of Tulare and City of Dinuba was dismissed without prejudice to the right of the County of Tulare and the City of Dinuba and saving to them "the right to have all their rights in the matter involved in the action determined and adjudged and decreed in those certain actions now pending in the superior court of the County of Tulare [three in number], in each of said actions said County of Tulare is plaintiff and said City of Dinuba and the San Joaquin Light and Power Corporation, a corporation, are defendants, as fully as such rights could be determined and adjudged and decreed in this action; and the joinder of said County of Tulare and City of Dinuba in this action is hereby waived." The rules for the computation of the gross revenues due to all said counties were settled in the Merced County action.

The judgment, entered May 7, 1924, adjudged the amount then due from said utility corporation (not including gross revenues which would annually accrue during the life of the franchises unless repealed by subsequent legislation and which revenues would yield a considerable net sum to said counties and cities) to be $30,748.53, and fixed the attorney's fees under the various contracts of employment made with attorney Middlecoff at something more than $36,000, not including the City of Dinuba's share, which sum was assessed against the several counties and cities in proportion

to the benefits received by each. Said judgment did not conclude the rights of either the County of Tulare or the City of Dinuba, in their controversy as to the division of the fund between the County of Tulare and the City of Dinuba, nor the right of the former to contest the claim made by Mr. Middlecoff as to attorney's fees against said county. He held a contract of employment with the City of Dinuba, the amount of his compensation being dependent upon the amount that would be awarded to said city in its controversy with the County of Tulare as to that issue. By stipulation the instant case was transferred to the superior court of Tulare County and by further stipulation to the superior court of the County of Fresno, where the issues were tried.

A number of irrelevant recitals appear in the findings of fact made by the superior court in the Fresno case which could have no bearing on the judgment so far as the question of the attorney's fee is concerned. The court found, however, that attorney W. W. Middlecoff was paid in full for all services rendered by him in the main case reported in 188 Cal. 664 [206 Pac. 983], while he was deputy district attorney of Tulare County and for services rendered thereafter as special counsel, and that nothing further was due him from said county. It also found that the Merced County suit was important and the questions of law and fact involved therein were difficult and the services extended over a period of practically two years and were of the value of $50,000; that all the counties and municipalities interested in said fund, except the County of Tulare, stipulated and agreed that the counsel fees of said W. W. Middlecoff should be fixed at the sum of $50,000 and should be paid out of said fund by deducting from the fund payable to each respective party a sum proportionate to the benefits received, and then proceeded to assess the same amount against each party as is set out in the Merced County judgment. The amount of $1,405.53 was allowed against the City of Dinuba, as a reasonable fee to be paid by that city, which was specially represented by Mr. Middlecoff.

Under the rules adopted as the basis of computation it was found that there was due to the County of Tulare from the utility corporation, ending December 31, 1924, the sum of $17,561.04 and to the City of Dinuba $2,064.24. From

the latter fund Mr. Middlecoff, as special counsel for said city, under his contract was allowed $1,405.53. The court found that the services which he rendered in said original cases as deputy district attorney of Tulare County and thereafter as special counsel had been fully paid for and, therefore, nothing was due him for services from Tulare County. It further found that at the time the action was commenced in Merced County the three actions heretofore mentioned were pending in the superior court of Tulare County, which was represented by the district attorney and special counsel, all of which was known to Mr. Middlecoff. Further, that said County of Tulare did not at any time during the pending of the Merced proceedings by resolution of its board of supervisors or otherwise employ Mr. Middlecoff as its attorney and did not by resolution or otherwise agree to pay him anything for any services rendered by him as attorney at law or otherwise. His demand for an attorney's fee to be taken out of Tulare County's allotment was, therefore, denied.

Appellant Middlecoff insists that an exceptionally important work was done by him in bringing about the settlement made by the utility corporation with all counties and cities in or through which its power lines passed and that his compensation should be great. The work of first and prime importance was the bringing of the suit by Tulare County before Mr. Middlecoff was connected with the litigation and carrying it forward at its own cost to a finality. That Mr. Middlecoff, with others, rendered valuable services in the later days of that suit, we have no reason to doubt. For those services he has been paid. That he rendered service in the action which he brought to compel an accounting there is no room for doubt. His services, however, were rendered under a contract made in the first instance with several certain counties and cities in the expectation that others would make like contracts of employment. Practically all but Tulare County did make similar contracts.

As to the claim that the services rendered by him were greater in value than those performed by others interested in formulating the rules which should be acceptable to all as the basis upon which computations should be made in determining the amount due from said utility corporation to the claimants, it is not sustained by the record. The law

of the case having been settled, the only task left was the devising of a plan that would be fair to all. The testimony of Mr. Carl E. Lindsay, chief counsel of the San Joaquin Light and Power Corporation, was to the effect that the set of rules which was finally adopted as furnishing a fair and just method of adjustment as between the contending parties and one which also was a compliance with the plan or scheme outlined by this court in *County of Tulare* v. *City of Dinuba*, 188 Cal. 664 [206 Pac. 983], was the result of the study and investigation given to the subject by the technicians and the legal representatives of a number of public service corporations of this state and their auditing departments, including the Southern California Edison Company, Southern Sierras Power Company, Pacific Electric Railway Company, Southern Counties Gas Company, and the San Joaquin Light and Power Company, at a conference held at the city of Los Angeles for the special purpose of devising a plan that would be fair and just as between the counties and municipalities on the one hand and the public utility corporations on the other hand. These rules were submitted to Mr. Middlecoff and the other interested parties and afterward, by consent of all, they were adopted by the trial court as furnishing the basis on which the settlement of the whole question was to be made. Mr. Middlecoff submitted his views as to what the rules should be and the County of Tulare had its notion on the subject, but the set of rules as worked out by said experts at the Los Angeles conference was the one that was adopted. He testified that Mr. Middlecoff's difficulties were not as to the rules, but largely with those whom he represented. No doubt he, as well as the attorneys for the County of Tulare, assisted in composing differences and bringing together disaffected claimants. For his services, however, he was, in our view, well compensated by the counties and cities which employed him.

There was some conflict existing between the interests of Tulare County and the City of Dinuba, specially represented by Mr. Middlecoff. This conflict did not go to the main question involved, but it did go to the question as to what portion of the fund allocated to Tulare County the City of Dinuba was entitled to possess. This same question was involved in all cases in which the municipalities were situate

within Tulare County. There was also a difference of opinion between Mr. Middlecoff and Tulare County's attorneys as to whether that county was entitled to interest on installments, which, whether disqualifying or not, would, in a court of equity, constitute a sufficient answer to bar an action to compel an acceptance of his services by said county. Again, this case differs from all the cases cited in that this is an action maintained in the interest of the attorney in which the litigants cannot possibly be benefited. Such actions as this are countenanced as affording relief to the litigant who has disbursed moneys for which a return should be made by the parties benefited by the action. The counties and municipalities in this action are bound by the contracts made by them and any award that might be made to Mr. Middlecoff would afford them no relief whatsoever. The payment of the fee of $50,000, which all the counties and municipalities represented by Mr. Middlecoff agreed or stipulated was a reasonable amount, was to be paid out of the funds recoverable by the parties who brought the Merced County action and those who afterward joined them and obligated themselves by contract. But the County of Tulare was not one of them. Therefore, they cannot recoup from Tulare County's share.

The underlying principle in all the cases where one has been allowed compensation out of a common fund belonging to others for expenses incurred and services rendered on behalf of the common interest is the principle of representation or agency. There must be a contract of employment expressly made or superimposed by the law upon the facts. (*Hand* v. *Railroad Co.*, 21 S. C. 162.) This has been done where the moving party has sought to preserve a fund from waste and destruction arising from the neglect and misconduct of trustees. (*Trustees* v. *Greenough*, 105 U. S. 527 [26 L. Ed. 1157].) The fact that one may be benefited by an action brought by another is not of itself sufficient to justify a court in assessing costs against the one who also profits by said action. Some contractual relation or some equitable reason sufficient to support an allowance of costs must be shown to exist to justify a court of equity in making such assessment.

In the instant case there is no principle of equity upon which a judgment against the County of Tulare can be sus-

tained. It was conducting its actions, the first brought in the state to test the validity of the Broughton Act, in good faith and for the benefit of the state of California, until its actions were intercepted by the Merced County action. It has borne the brunt of the litigation to establish the law and it was at all times willing to go forward in an orderly manner and in its own way to reduce to possession that which this court said in the decision of the case made by it, it was entitled to possess. It would be most inequitable in the light of the history of this action to compel the County of Tulare, which not only has had its district attorney actively engaged in representing it through a series of years in litigating the questions out of which this action springs, but which has also specially employed counsel to assist said district attorney, to pay a substantial part of all that it is entitled to receive as compensation to the attorney whose fee was fixed by others who had no power or right to bind it or direct it as to the course it should take in pursuing its remedies.

The judgment and order appealed from are affirmed.

Preston, J., Langdon, J., Shenk, J., Richards, J., and Waste, C. J., concurred.