Land, Log & Lumber Co. and others vs. McIntyre.

*May 26 — June 23, 1898.*

*Counties: Recovery of moneys illegally drawn by supervisors from treasury: Action by taxpayer: Construction of statutes: "Void" contracts: Retention of benefits: Parties.*

1. If a member of a county board of supervisors receives illegal compensation for his services, or money for articles sold by him to the county for its use, or for labor or material furnished in the construction of a highway having no legal existence, or converts money to his use appropriated for work on a public highway, an action will lie in favor of the county against such supervisor, to recover back such money.

2. Sec. 692, R. S. 1878, which prohibits a member of a county board of supervisors from in any manner being interested in any contract for the purchase of any article for the use of the county, and declares all such contracts void and that any offending member shall be deemed to have vacated his office by reason of his offense, covers contracts executed as well as executory, and renders them all void absolutely.

3. Where the statute provides that the act shall be void, and fixes a penalty for the perpetration of the prohibited act, the word "void" should be interpreted as meaning void absolutely, in accordance with the technical accuracy of the word.

4. Where a county, by the wrongful conduct of its county board, parts with county money for something which it has no legal right to

acquire or do, no equitable considerations stand in the way of re-
covering back such money, from the mere fact that the county has
received a benefit.

5. Where a public corporation has a cause of action which should be
prosecuted for its use, whether legal or equitable, and its governing
body neglects and refuses to institute an action therefor, a tax-
payer may, on behalf of himself and all others similarly situated,
institute an action in equity to redress the wrong to the corpora-
tion, making it a defendant as trustee for all its members.

[Syllabus by MARSHALL, J.]

APPEAL from an order of the circuit court for Vilas county:
W. F. BAILEY, Judge. *Affirmed.*

Action to charge defendant *F. W. McIntyre* as trustee of
defendant Vilas county, of certain moneys alleged to have
been corruptly drawn by him from its treasury, and to com-
pel him to account therefor and pay the same over to such
county for its use, the amount involved being $1,763.65. The
complaint contains three causes of action, the facts being to
the effect that, from April, 1894, to April, 1895, while chair-
man of the board of supervisors of the county, *McIntyre*
filed numerous bills for illegal claims against the county,
knowing them to be such, all of which are set forth in detail
with allegations showing such illegality, and corruptly caused
such bills to be audited, and county orders to be issued to
himself therefor, and such orders to be paid by the county
treasurer, and that thereby, through forms of law, he trans-
ferred the money so paid from such treasury to his personal
possession, and converted the same to his own use. One
cause of action is for money alleged to have been drawn in
the manner aforesaid, for services in excess of those allowed
by law, and for pretended services, not rendered, and dis-
bursements not made or legally chargeable; one for goods,
wares, and merchandise, and labor furnished by *McIntyre* for
use in constructing a so-called county road that had no ex-
istence in fact; and one for money drawn on a county order
which *McIntyre* caused to be issued without any claim being

Land, Log & Lumber Co. and others vs. McIntyre.

placed on file upon which to base such order, or there being any consideration therefor. Facts are further set forth to the effect that plaintiffs are taxpayers of the county; that after *McIntyre's* term of office expired, and in July, 1895, they laid the matters complained of, with a full statement of the facts, before the county board, and demanded that such board institute an action to recover the money squandered as aforesaid, which was refused, and that thereupon they instituted this action in their own behalf and that of all other taxpayers of the county. The relief prayed for is that *McIntyre* be compelled to account and restore to the county, for its use, the money illegally and fraudulently obtained by him, as stated in the complaint, and pay the costs and disbursements of the action.

A demurrer was interposed to each cause of action, for want of sufficient facts stated therein to constitute a cause of action, and for want of facts stated sufficient to show jurisdiction of the action. The demurrer was overruled, and this appeal was taken from the order entered to that effect.

For the appellant there were briefs by *Ryan, Hurley & Jones* and *D. E. Riordan,* and oral argument by *T. C. Ryan.* They contended, *inter alia,* that sec. 692, R. S. 1878, does not mean that all contracts made in violation thereof are nullities, but merely that they are void if the county chooses to consider them so. After they have been wholly or partially executed they will not be set aside without compelling the plaintiff to do equity. 1 Dillon, Mun. Corp. § 444; *Macon v. Huff,* 60 Ga. 221; *Green v. Kemp,* 13 Mass. 515; *Allis v. Billings,* 6 Met. 415; *People v. Open Board S. B. B. Co.* 92 N. Y. 98; *Boyd v. Blankman,* 29 Cal. 19; *White v. Iselin,* 26 Minn. 487; *Hoffman v. Harrington,* 28 Mich. 90; *Farnum v. Perry,* 43 Vt. 473; *Cook v. Berlin Woolen Mill Co.* 43 Wis. 445; *Lee v. Peckham,* 17 Wis. 391; Pomeroy, Eq. Jur. § 391; *Hammond v. Wallace,* 85 Cal. 522.

For the respondents there was a brief by *Curtis & Reid*

and *John Barnes*, and oral argument by *Mr. Barnes*. They argued, among other things, that taxpayers have a right to protect themselves against illegal and fraudulent acts of officials. *Peck v. School Dist.* 21 Wis. 522; *Whiting v. S. & F. du L. R. Co.* 25 id. 167; *Lawson v. Schnellen*, 33 id. 288; *Nevil v. Clifford*, 55 id. 161; *Willard v. Comstock*, 58 id. 565; *Lynch v. E., L. F. & M. R. Co.* 57 id. 430; *Bay Land & Imp. Co. v. Washburn*, 79 id. 425; *McVichie v. Knight*, 82 id. 137; *Fowler v. Superior*, 85 id. 411. A taxpayer has as good a right to maintain such an action as a stockholder in a private corporation has to compel money to be restored to its treasury that was wrongfully taken therefrom by its officers. *Quaw v. Paff*, 98 Wis. 586. Such right of action clearly exists. Cook, Stock (2d ed.), § 750; *Dodge v. Woolsey*, 18 How. 331; *Memphis G. G. Co. v. Williamson*, 9 Heisk. 314; *Park v. Petroleum Co.* 25 W. Va. 108. Appellant is in no better position to recover *quantum meruit* for the goods furnished the county than if the goods had not been paid for and he was bringing suit to recover the value of them. *Pickett v. School Dist.* 25 Wis. 551; *Oconto Co. v. Hall*, 47 id. 208; *People ex rel. Plugger v. Township Board of Overyssel*, 11 Mich. 222.

MARSHALL, J. It is suggested by appellant's counsel in support of the demurrer to the cause of action to recover back illegal compensation for supervisor's services, alleged to have been paid by the county to appellant, that plaintiffs have an adequate remedy at law under secs. 2955–2957, R. S. 1878. That gives a person aggrieved by an officer's demanding and receiving of him illegal fees or compensation, a remedy at law to recover the same back, with a penalty of $25. True, if plaintiffs have an adequate, or any, remedy under such section, it is an objection to the sufficiency of the complaint that may be reached by demurrer; but it is quite clear that no such remedy exists. The sections referred to apply solely

to cases where a person has been directly injured by being required to compensate an officer beyond that to which he is legally entitled. This action is to enforce a cause of action in favor of the county. It is the corporation that has been directly injured and has the primary right to proceed. Plaintiffs' interests are wholly indirect, like that of a member of any private corporation under the same circumstances. They could not proceed at law for an injury to the corporation, or in their own names for their own benefit, independent of a statute granting the remedy, and certainly there is none. Illegal acts of corporate officers, whereby its property is misapplied, squandered, or lost, are not injuries to the separate interests of its stockholders or members, that can be reached and remedied in a direct action by them. As to them the injury is purely incidental and consequential, the direct injury being to the corporation itself, and must necessarily be redressed by it or for its use, for the benefit of all the members thereof. Thomp. Corp. § 4476; Dillon, Mun. Corp. § 915.

The next point made is directed particularly to the cause of action to recover money received by *McIntyre* for goods, wares, and merchandise, and labor alleged to have been furnished by him to the county while he was a member of its board of supervisors, in violation of sec. 692, R. S. 1878, which prohibits a person so circumstanced from being a party to, or in any way or manner interested, either directly or indirectly, in, any contract or agreement whatever with the county, for the purchase of any article whatever, required by such county, and provides that all contracts or agreements in violation thereof shall be void, and the offending supervisor, by reason of his offense, be deemed to have thereby vacated his office. The purpose of that section was unmistakably to include contracts, executed as well as executory, between members of a county board and their county for the purchase of any and all articles for its use.

No member of a county board can be interested, directly or indirectly, in any such contract without being guilty of gross violation of public duty, and liable to respond therefor in damages to the corporation to the full extent of any pecuniary benefit received by him in any event, and such further sum as the corporation may have lost by his unfaithful conduct.

But it is said the county received a benefit from the property and labor furnished by appellant, and that the rule is that equity will not interfere with an executed contract under such circumstances, and compel a restitution of the money received on the illegal contract, or any part of it, while the corporation retains the benefit, and many authorities are cited in support of that view, all relating, however, to cases where, though the corporation had power to incur the indebtedness or make the expenditure, there was some violation of law in the manner of doing it. That has often been recognized and applied in this court, as in *Pickett v. School Dist.* 25 Wis. 551, but a distinction was there clearly made between such circumstances and those where the manner of doing the thing was not only unlawful, but the doing of the act at all was unlawful as well. The court said in the latter mentioned circumstances: "The parties acquire no rights which can be enforced either in courts of law or equity." But in the former, the thing contracted for being itself lawful and beneficial, it would seem improper to allow the party who may be entitled to avoid it, to receive and retain the benefit without any consideration at all. The court was there speaking of a contract voidable as against public policy under common-law principles as distinguished from those void absolutely as not within the power of the corporation. The same distinction was recognized in *Beyer v. Crandon*, 98 Wis. 306, where it was held by this court, that performance of a contract with a town to construct a road that has no legal existence does not create a claim,

legal or equitable, against such town. That rule applies to the greater part of the sum sought to be recovered by the second cause of action, the same having been paid, as alleged, for property and labor in the construction of a so-called county road that had no legal existence.

Independent of the rule discussed in the foregoing, however, it is quite clear that our statute means what it says in declaring all contracts, between a supervisor and the county for the purchase of articles for its use, void, and that the offending member shall be deemed to have vacated his office by reason of his conduct. True, in *White v. Iselin*, 26 Minn. 487, where the statute of that state, which declares that if a guardian, executor, or administrator be interested, directly or indirectly, in a sale of real estate made by him it shall render such sale void, the court held that the word "void" was used, not in the sense of absolutely void, or void at law, but as voidable in equity; but that result was reached by a process of reasoning which, applied to this case, reaches the opposite result. As there said, in effect, the word "void" is sometimes used in the sense of absolutely void, so that no title passes under a contract to which it applies, and sometimes in the restricted sense of voidable in equity, so that oftentimes, under a statute using the term, a question of intention is presented which must be determined by the established rules of statutory interpretation. The general policy of the statute to give stability to titles, taken in connection with some sections of the Minnesota statute declaring that no irregularity in making the sale, after license duly issued, shall render such sale subject to question by a stranger to the title sold, and other sections indicating that a sale and conveyance, though affected by some irregularity that might render it subject to question, unless seasonably challenged, and before innocent parties become interested, will be held to convey a good title, were deemed sufficiently persuasive to warrant the court in holding that the word

" void " as there used was not intended to extend the common-law rule on the subject. *Hoffman v. Harrington*, 28 Mich. 90; *Forbes v. Halsey*, 26 N. Y. 53; *Terwilliger v. Brown*, 44 N. Y. 237, and many other cases that might be cited, held to the opposite view in respect to similar statutes, the courts not perceiving circumstances indicating a legislative intent to use the word other than in its ordinary strict sense. Technical accuracy, it is admitted by all courts and text writers, makes all contracts and acts to which the word applies, nullities and of no effect whatever, not even to furnish a groundwork to make a valid contract by confirmation or ratification. This court gave to the word, as used in our statute prohibiting administrators and guardians from buying at their own sales, the same construction as the Minnesota court, in *Melms v. Pabst Brewing Co.* 93 Wis. 153, and for the same reasons, admitting, however, that entire legal accuracy was thereby invaded to carry out what was deemed to be the real purpose of the statute. In *Woodbury v. Parker*, 19 Vt. 353, and *Wickliff v. Robinson*, 18 Ill. 145, the word " void," in a statute prohibiting a sheriff from buying at his own sale, was held to have been used by the lawmakers in the strict general sense of void absolutely. In reaching that conclusion the Illinois court was influenced by the obvious policy of the law in which the word occurred, to remove all danger of pecuniary gain causing a departure from official duty.

So it is manifest, as has been remarked often by text writers and oftener by courts, that few, if any, words are more inaccurately used in the books than the word " void." Sometimes it means void absolutely, and sometimes void conditionally, and the courts are necessarily compelled, in order to carry out the real purpose of the lawmakers, to determine as to each statute where the word occurs what was the thought in the minds of such lawmakers, and that is often not free from difficulty. Some familiar rules of interpreta-

tion must necessarily play an important part in reaching a correct conclusion here, among which are, that where words may be viewed in a comprehensive general sense, or a particular and restrictive sense, the presumption is, in the absence of anything indicating a contrary purpose, that the comprehensive general sense was intended; and that where language is susceptible of two reasonable interpretations, one that will create an absolute forfeiture, and the other not, courts lean towards the latter; but where it will admit of but one reasonable interpretation, courts must hold to that whatever may be the consequences of it.

So, we start with what must be conceded, that the primary and strictly accurate meaning of the word " void " is that of absolute nullity. Void things are as no things. We look in vain for anything in the statute under consideration, or any circumstances of public policy, to indicate that the legislature, in prohibiting members of boards of supervisors from being pecuniarily interested in county contracts for the purchase of articles for its use, used the word in question in any other than its broad, general sense. On the contrary it would seem that public policy requires a most rigid adherence to the plain meaning of language wisely designed to prevent such officers from contracting with themselves and speculating off their counties by being either directly or indirectly interested in the sale of material for its use, and that all temptation to do so should be removed by absolutely prohibiting the power to do so. If anything other than such public policy, which we may safely assume influenced the lawmakers, were wanting to show the purpose of the law in question, it is furnished by the penalty of the statute, in that an official who shall violate its provisions is deemed thereby to have vacated his office. The legislative idea, seen in the statute, was not only to render absolutely void any contract made in violation of its provisions, but to render an offending official incapable of a further violation thereof. Where a statute

declares a contract void and imposes a penalty for making it, such contract is illegal, it is absolutely void, not voidable merely (Endlich, Interp. Stat. § 270; Maxwell, Interp. Stat. [3d ed.], 297); and where public policy requires a strict construction, the word should always receive its natural force and effect. Id.

The foregoing appears to leave no room for reasonable controversy as to the sense in which the word "void" was used in the statute under consideration; and it follows logically that appellant got no title to money he obtained for property furnished for use on the pretended county highway, because it had no legal existence, and there was no power to expend county money thereon; and no title to money obtained by him through sales of material to the county, because such transactions were utterly void and illegal. Therefore the county has a cause of action against appellant to recover all such money.

The only other contention in favor of the demurrers that need be considered is one that applies to all the causes of action, viz., that if the county has a remedy for the wrongs complained of, it is at law, hence this action in equity cannot be maintained; that the duty of determining when a suit shall be brought being vested in the county board, it cannot be controlled or exercised by a taxpayer. Such contention is based in a misapprehension of the nature of the remedy invoked by plaintiffs, as further discussion will show.

True, the discretionary power is vested in the county board, of determining when a suit shall be brought to enforce its rights, but that means legal discretion. Where there is a clear abuse of power in that regard, the body guilty of it is thereby placed outside the protection of the rule stated, and may be compelled to act, or in some cases other remedies may be resorted to. If a county or other corporation has a plain cause of action for an injury done to it, that should be enforced for the protection of its members,

and its governing body refuses to perform its plain duty in the premises, our system of jurisprudence is by no means so weak that justice can thereby be defeated. On the contrary, any member of the corporation, by reason of his indirect interest therein, suing in behalf of himself and all similarly situated, may set judicial proceedings in motion, making the corporation a defendant, as trustee for all its members, and thereby enforce the rights of the corporation.

It was the early doctrine in New York that a taxpayer could not prosecute such an action as this. The result was that when the people of the city and county of New York discovered that they had been systematically plundered by trusted officials, and the members of the governing body of the corporations were so interested in the fraudulent schemes by which the people had been defrauded that they would not prosecute to recover the public funds, squandered and lost, such taxpayers were powerless to meet the situation in any effective manner, and the legislature was compelled to provide a remedy. It was not questioned in the early case of *Doolittle v. Sup'rs of Broom Co.* 18 N. Y. 155, or in the later case of *People v. Ingersoll,* 58 N. Y. 1, where the situation referred to developed, but that for malfeasance in office, by officers of a public corporation, resulting in squandering public funds, such corporation has a right of action to recover its damages, or the power of a court of equity to reach the mischief at the suit of a taxpayer; but it was deemed inconsistent with wise public policy to permit one, or any number, of private persons, by reason of their indirect interests, to set themselves up as champions of the community and thereby compel officers to meet them in the courts and account for their official conduct. Such holding, under the circumstances, amounted to an absolute denial of justice. It is contrary to the administration of equity jurisprudence in most jurisdictions, and contrary to repeated rulings of this court on the subject.

Land, Log & Lumber Co. and others vs. McIntyre.

The general rule is that where a cause of action exists in favor of a corporation, and its governing body refuses to enforce it, any member thereof may do so by suing in equity in behalf of himself and all others similarly situated. Thompson, Corp. § 4479; *Doud v. W., P. & S. R. Co.* 65 Wis. 108; *Hinz v. Van Dusen,* 95 Wis. 503. That applies to public as well as private corporations. *Willard v. Comstock,* 58 Wis. 565; *Frederick v. Douglas Co.* 96 Wis. 411; *Quaw v. Paff,* 98 Wis. 586; Dillon, Mun. Corp. § 915. And by force of a statute of this state, a creditor of a corporation has sufficient interest therein to entitle him to maintain the action. *South Bend C. P. Co. v. George C. Cribb Co.* 97 Wis. 230; *Gores v. Day,* 99 Wis. 276. The purpose of the remedy in such cases is not to interfere with the exercise of legal discretion on the part of those charged with the primary duty of enforcing corporate rights, but to furnish relief where there is an unjustifiable neglect or refusal to exercise such discretion. Neither is the remedy confined to the one which the corporation may invoke, whether equitable or legal. The remedy afforded to a member of a corporation is necessarily in equity, for he has no direct interest to be protected by a personal action. He must proceed in equity or not at all, joining the corporation as a party in the capacity of trustee for all its members.

So the test is not whether the corporation can sue in equity, but whether it can sue at all. Whether its remedy, if exercised direct, would be at law or in equity, that of the member indirectly interested, to enforce its rights, must always be in equity. That is his only remedy. The direct injury to be remedied is to the corporation as a whole. The cause of action belongs to the corporation, but is enforceable, rather than that justice shall utterly fail, by the remedy in equity at the suit of its members. *Bay City Bridge Co. v. Van Etten,* 36 Mich. 210, upon which appellant chiefly relies as authority that this action will not lie because the

county could not sue in equity, was a suit by the corporation. Its cause of action was held to be at law because the defendant was no longer an officer, hence could not be charged in equity as a trustee for the corporation. But if the corporation had refused to prosecute for the wrongs done to it and a member thereof desired to move in the matter, his only remedy would have been in equity, not to enforce his cause of action, but to enforce the cause of action of the corporation by the only remedy open to him for that purpose.

So the rule is firmly established that where a cause of action exists in favor of a corporation, whatever be its proper remedy, if its governing body refuses to proceed, justice cannot thereby be defeated, for those upon whom the injury indirectly falls may obtain redress in equity. It certainly would be a strange situation if unfaithful officials could plunder a county in the manner alleged in the complaint and be free from danger of being compelled to return their ill-gotten gains, or make good the injury caused by their corrupt conduct, because they had retired from office and the corporation, through its proper officers, unjustly refused to prosecute them. The intelligence and wisdom of the law-makers, and the boasted power of courts of equity to lay hold of situations where legal remedies stop, and prevent a failure of justice flowing from defective legal remedies, are not rightly subject to such a criticism. As well said by Chief Justice ORTON, in *Willard v. Comstock*, 58 Wis. 565, in substance: If, for conduct such as detailed in the complaint, there is no remedy, and there is none unless this be proper, the taxpayers are at the mercy of dishonest officials and must stand by and see the public treasury plundered, bound helpless by technical rules of law. The idea is simply preposterous, and that is all that need be said about it. No such situation exists, as is sufficiently shown by what has preceded. The powers of courts of equity are broad and absolute enough to fit all situations where justice requires a

Land, Log & Lumber Co. and others vs. McIntyre.

remedy. While guided by precedents, equity is not bound by them, but may meet new situations as they arise, so that in the race between it and the ingenuity of unfaithful officials, the former will generally prevail, unless defeated by utter insolvency of such officials.

It follows that each of the causes of action set forth in the complaint states facts sufficient to support it, hence the trial court was right in overruling the demurrer.

*By the Court.*— The order of the circuit court is affirmed.

BARDEEN, J., took no part.