STATE, *ex rel.*, BONNER *et al. v.* ANDREWS,
City Comptroller.

(*Nashville.*  December Term, 1914.)

1. **MANDAMUS. Compelling official action. Suit by taxpayers.**
   Taxpayers of a city may, by mandamus, compel city officers to collect privilege taxes imposed by statute where the officers charged with the duty of collecting taxes make no attempt so to do. (*Post, pp.* 560-578.)

   Cases cited and approved:  Diamond v. State, 123 Tenn., 348; Knight v. Village of Thompsonville, 74 Ill. App., 550; In re Minneapolis Police Department Relief Ass'n, 85 Minn., 302; Stone v. Bevans, 88 Minn., 127; Shepard v. Easterling, 61 Neb., 882; State v. Cornwall, 97 Wis., 565; Land, Log & Lumber Co. v. McIntyre, 100 Wis., 245; Id., 100 Wis., 258; Johnson v. Black, 103 Va., 477; Cathers v. Moores, 78 Neb., 17; Independent School District No. 5 v. Collins, 15 Idaho, 335; Walker v. Village of Dillonvale, 82 Ohio St., 137; Wilcox v. Porth, 154 Wis., 422; Read v. Cunningham, 126 Iowa, 304; Finney v. Garner, 110 Tenn., 67; State v. Holt, 163 Ind., 198.

   Cases cited and approved:  State v. True, 116 Tenn., 294; Park v. City of Laurens, 68 S. C., 212; Milster v. Spartanburg, 68 S. C., 243.

   Cases cited and distinguished:  Russell v. Tate, 52 Ark., 541; Zuelly v. Casper, 160 Ind., 455; Kimble et al. v. Board of Commissioners of Franklin County, 32 Ind. App., 377; Woodruff v. New York, etc., R. Co., 129 N. Y., 27; Central R., etc., Co. v. Pettus, 113 U. S., 116; Fox v. Hale, etc., Mining Co., 108 Cal., 475; Sands v. Greely & Co. (C. C.), 83 Fed., 772; Grant v. Lookout Mt. Co., 93 Tenn., 691; Crampton v. Zabriskie, 101 U. S., 601; Trustees v. Greenough, 105 U. S., 527.

2. **LICENSES. Compelling collection. Suit by taxpayers. Lien.**
   Taxpayers of a city, compelling by mandamus city officers to collect privilege taxes imposed by statute, have a lien on funds

State, ex rel., Bonner v. Andrews.

collected by the officers for the full amount of expenses and counsel fees, but have no lien on judgments recovered for taxes. (*Post, pp.* 560-578.)

3. **LICENSES. Privileges. Enforcement. "Debt."**
A privilege tax is a "debt" and may be sued on as such.   (*Post, pp.* 578, 579.)

Cases cited and approved:   State v. Nashville Sav. Bank, 84 Tenn., 111; State & Davidson County v. Hirsch Bros., 84 Tenn., 40; Union & Planters' Bank v. Memphis, 101 Tenn., 154; Mayor & Aldermen of Jonesboro v. McKee, 10 Tenn., 167; Rutledge v. Fogg, 43 Tenn., 554; State v. Duncan, 71 Tenn., 680; State v. Railroad Co., 82 Tenn., 56; Nashville v. Cowan, 78 Tenn., 209; E. T. V. & G. R. Co. v. Morristown, (Tenn. Ch. App.), 35 S. W., 771.

4. **LICENSES. Privilege tax. Statutory provisions.**
A privilege tax may be levied by statute, either on a percentage basis or for a fixed sum, and when so imposed may be sued for as a debt by the State, county, or municipality. (*Post, pp.* 578, 579.)

5. **TAXATION. Assessment of taxes. Effect. "Debt."**
A tax, when assessed on a valuation of property, creates a personal "debt" in favor of the government against the person whose property is assessed. (*Post, pp.* 578, 579.)

6. **LICENSES. Privilege tax. Enforcement. Suit by taxpayers.**
Taxpayers of a city, seeking by mandamus to compel officers to collect a privilege tax on persons continuing to sell intoxicating liquors notwithstanding the prohibition law, may amend their bill so as to bring the persons liable to a privilege tax before the court, so that it may render judgment for the city, or may cause distress warrants to issue for the immediate collection of the tax, or may, on obtaining an assessment of the tax, cause a *scire facias* to issue for the parties assessed to show cause why they should not be held liable or why distress warrants should not issue. (*Post, pp.* 579, 580.)

7. **SCIRE FACIAS. Requisites. Judgment.**

The writ of *scire facias* is awarded by the court and is both a writ and a pleading, but must be based on some matter of record, as a judgment, bond, or some entry or suggestion of record. (*Post, p.* 580.)

Cases cited and approved:   State v. Johnson, 65 Tenn., 198; State v. Patterson, 66 Tenn., 246; Gregory v. Chadwell, 43 Tenn., 390; Frierson, Adm'r, v. Heirs of Harris, 45 Tenn., 146; Martin v. Gorden, 4 Tenn., 173; Hayes v. Cartwright, 74 Tenn., 139.

8. **SCIRE FACIAS. Requisites of writ. Manner of testing.**

The writ of *scire facias* may be tested by demurrer, or if fatally defective by writ of error or appeal. (*Post, p.* 580.)

9. **LICENSES. Privilege tax. Assessment.**

An assessment of a privilege tax is void where it does not show the amount due, but merely contains figures and ruled columns without dollar marks. (*Post, pp.* 581, 582.)

Cases cited and approved:   Thompson v. Evans, 2 Tenn. Ch. App., 61; Dunn v. Dunn, 99 Tenn., 598; Hamilton v. Brownsville Gaslight Co., 115 Tenn., 150; Barnes v. Brown, 1 Tenn. Ch. App., 726; Payton v. Stuart & Looney, 7 Tenn., 156; McIntosh v. Paul, 74 Tenn., 45; Rogers v. Hollingsworth, 95 Tenn., 357.

10. **LICENSES. Privilege tax. Assessment. Scire facias. "Judgment."**

An assessment of a privilege tax, though not strictly a "judgment," ascertains the amount due, at least provisionally, and may be the basis of a *scire facias*, but when the assessment is wholly void *scire facias* is necessarily void. (*Post, pp.* 581, 582.)

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County to the Court of Civil Appeals, and by *certiorari*

from the Court of Civil Appeals to the Supreme Court.
—JOHN ALLISON, Chancellor.

JORDAN STOKES, FRANK SLEMONS, LAURENT BROWN, LOUIS LEFTWICK, and RUTHERFORD, & RUTHERFORD, for relators.

A. G. EWING, JR., and F. M. GERARD, for defendant.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

When the present bill was filed in the chancery court of Davidson county, the situation was this: The prohibition law applicable to Davidson and other large counties had gone into effect, but notwithstanding this fact tipplers continued to sell intoxicating liquors. They had no license and could procure none. Our statutes imposed a tax on persons exercising privileges just as if they had license; the privilege tax bing fixed at certain sums. This court in a published opinion had held that the latter tax was valid. *Diamond* v. *State*, 123 Tenn., 348, 131 S. W., 666, and cases cited. Notwithstanding this fact municipal authorities did not make any attempt to collect these taxes. The reason assigned was that such action would somehow interfere with the enforcement of the principle of prohibition; this notwithstanding the declared policy of the State, evidenced by an act of the legislature, to use a tax as a means of compelling obedience to law. In this state of affairs certain tax-

. payers filed a bill in the name of the State seeking a *mandamus* to compel the city officers to collect the taxes referred to. This bill alleged that these taxes amounted to more than $400,000. The comptroller of the city was made defendant; afterwards by supplementary proceedings the treasurer, Myers, and the city itself were made defendants. Such proceedings were had as that about $30,000 were collected by the comptroller and treasurer under the *mandamus* which was awarded, and this sum went into the city treasury. During the progress of the cause it developed that, in order to make the proceedings available against about sixty of the delinquents, additional proceedings were undertaken under writs of *scire facias*. Orders were entered directing these writs to be served, commanding the persons referred to, to come into court and show cause why they should not pay the amounts charged against them severally for the exercise of the privilege of liquor selling, in which it was alleged they were engaged. These proceedings resulted in the payment into court of the sum of about $5,000; also in the recovery of judgments by the complainant, for the use of the city, against many of these persons. Some part of the $5,000 was paid into court through compromises made between counsel for the relators and the parties charged.

The relators moved the court for a lien for their counsel fees and for expenses incurred in realizing the fund and the judgments and for all the labors of their counsel in the cause, on the said $5,000 in court

and on the judgments recovered. The chancellor granted the motion as to the $5,000 and denied it as to the judgments; furthermore he limited the lien on the $5,000 to the labor and expense incurred in bringing that amount of money into court. From this decree the relators and the city of Nashville, together with the comptroller and treasurer, appealed to the court of civil appeals. That court modified the chancellor's decree so as to fix a lien on the $5,000 and any other money that may come into court, in the cause, for the full amount of the fees that may be due counsel for all of their services performed in the cause, but affirmed so much of the chancellor's decree as denied a lien on the judgments recovered. The relators have not filed any petition in this court, so the correctness of the chancellor's decree upon this latter aspect of the case is not before us. However, the city of Nashville and its treasurer and comptroller have filed into this court a petition for a writ of *certiorari,* and have therein assigned errors against the chancellor's decree, questioning his right to grant any lien at all.

So the question before us is whether the relators are entitled to a lien on the funds which they caused to be brought into court; it appearing that it was necessary to file a bill for the purposes stated, because the city, through its officers, persistently and intentionally failed to discharge its duty in the collection of the taxes mentioned.

We think it is perfectly clear that the court of civil appeals acted correctly in granting the lien. The general principles governing the inquiry are fully stated in the fifth edition of Dillon's Municipal Corporations, vol. 4, pp. 2763-2785. In these pages he states the doctrine, and discusses it in the light of the decisions. We shall, however, do no more than to briefly refer to a few passages. The author (section 1579) first takes up the subject of the right of property holders or taxable inhabitants to restrain municipal corporations and their officers from transcending their lawful powers or violating their legal duties in any mode which will injuriously affect the property holders or taxpayers, such as making an unauthorized appropriation of the corporate funds, or an illegal or wrongful disposition of the corporate properties, or levying and collecting void and illegal taxes. After asserting that this power or right is now generally conceded he continues:

"The doctrine of the preceding section is also supported by an analogy supplied by a settled rule of equity applicable to private corporations. In these the ultimate *cestuis que trust* are the stockholders. In municipal corporations the *cestuis que trust* are in a substantial sense the inhabitants embraced within their limits. In each case the corporation, or its governing body, is a trustee. If the governing body of a private corporation is acting *ultra vires* or fraudulently, the corporation is ordinarily the proper party to prevent or redress the wrong by appropriate action

or suit in the name of the corporation. But if the directors will not bring such an action, our jurisprudence is not so defective as to leave creditors or shareholders remediless; and either creditors or shareholders may institute the necessary suits to protect their respective rights, making the corporation and the directors defendants. This is a necessary and wholesome doctrine. Why should a different rule apply to a municipal corporation? If the property or funds of such a corporation be illegally or wrongfully interfered with, or its powers be misused, ordinarily the action to prevent or redress the wrong should be brought by and in the name of the corporation. But if the officers of the corporation are parties to the wrong, or if they will not discharge their duty, why may not any inhabitant, and particularly any taxable inhabitant who will be injuriously affected, be allowed to maintain in behalf of all similarly situated a class suit to prevent or avoid the illegal or wrongful act? Such a right is especially necessary in the case of municipal and public corporations, and if it be denied to exist, they are liable to be plundered, and the taxpayers and property owners, on whom the loss will eventually fall, are without effectual remedy." Id., sec. 1580.

After further discussing the subject, in its negative aspect, that is, the right to restrain illegal action on the part of corporate authorities, Judge Dillon then adds in section 1588:

"Since previous editions of this treatise, the views expressed in the preceding paragraphs have not only been steadily adhered to by the courts, but in some jurisdictions at least, the rights of taxpayers have been extended to give more effectual protection against illegal acts of municipal officers. It has been held by the courts .of several States that when a municipal or other public corporation has a cause of action which should be prosecuted for its use, whether that cause of action be legal or equitable, and its governing body or other proper officer wrongfully neglects or wrongfully refuses to commence an action thereon, a taxpayer may, on behalf of himself and all others similarly situated commence an action in equity to redress the wrong to the corporation, making the corporation a defendant as trustee for all its members. Accordingly, it has been held that a taxpayer may sue to recover back, on behalf of the municipality, moneys of the municipality unlawfully paid to officers, contractors, and others."

A reference to a few of the cases may be useful. In *Russell* v. *Tate*, 52 Ark., 541, 13 S. W., 130, 7 L. R. A., 180, 20 Am. St. Rep., 193, a bill was filed, among other things, for the purpose of compelling restitution to the town treasury of the town of Russellville of the sum of $675, paid out by the town authorities for wrongful and illegal purposes. In granting this relief the court said:

"Suits by taxpayers against towns and their officers to prevent or remedy misapplication .of town funds

are not only allowed by statute, but it is the prevailing doctrine in America that taxpayers may maintain them, in the absence of statute. Their relations to the municipality are analogous to those of stockholders to a private corporation. . . .

"There is no foundation in the authorities for the claim that the power of chancery is only injunctive. It would be a reproach to justice if it were true. In the present case the appropriation was made, the warrant was drawn, and the money paid by the treasurer, before an attorney could have comprehended the situation and have written the caption of a complaint. Chancery has ample power to prevent further wrong and require reparation for that which has been done."

In *Knight* v. *Village of Thompsonville,* 74 Ill. App., 550, it was held that a suit might be brought in the name and for the benefit of a municipal corporation to recover property belonging to the corporation, or for any money which had been paid out, expended, or released without authority of law, against the party having the money or property. *In re Minneapolis Police Department Relief Ass'n,* 85 Minn., 302, 88 N. W., 977, was a case wherein it appeared that an association organized for certain beneficial purposes was dissolved, and that certain funds which had been given by the city to the association would revert to the city. It was held in this case that since the city had a cause of action for the money, it was the duty of its officers to institute legal proceedings, and

if they refused to perform this duty, a taxpayer might apply to a court and be permitted to sue in equity in behalf of himself and all others similarly situated to enforce the right. In *Stone* v. *Bevans,* 88 Minn., 127, 92 N. W., 520, 97 Am. St. Rep., 506, it was held that where the common council of a village and one of its members had entered into an illegal contract, on which such member had received money, this money might be recovered for the village in a suit by a taxpayer. To the same effect are *Shepard* v. *Easterling,* 61 Neb., 882, 86 N. W., 941; *State* v. *Cornwall,* 97 Wis., 565, 73 N. W., 63; *Land, Log & Lumber Co.* v. *McIntyre,* 100 Wis., 245, 75 N. W., 964, 69 Am. St. Rep., 915; Id., 100 Wis., 258, 75 N. W., 964, 69 Am. St. Rep., 925. In *Zuelly* v. *Casper,* 160 Ind., 455, 67 N. E., 103, 63 L. R. A., 133, it was held that a taxpayer of a county might bring a suit in his own name on behalf of the public to compel restoration to the treasury of money illegally appropriated as fees by a county officer with the consent of the board of commissioners, where the board refused to bring it; the board being joined as defendant in the action. In that case a suit was brought to recover for the use of the county some $3,985, charged to have been wrongfully allowed by the board and unlawfully paid to the appellee Casper, who was the auditor of the county in excess of the salary, fees, and compensation to which he was entitled under statute. The court said:

"The reasons given by the courts in support of the right of a taxpayer to maintain an action to enjoin

an unlawful disposition of public funds apply with equal force where the wrong has been accomplished, the funds dissipated, and the public officers, whose duty it is to sue for and recover the money, obstinately or corruptly refuse to act.  In the case of private corporations, it has often been decided that suit may be brought by a stockholder, on behalf of the corporation, against the directors and others for frauds, wrongs, and breaches of trust, and for the recovery from them of money of which the corporation has been defrauded; the latter being joined as a defendant. . . . The legal principle which, under special circumstances, and subject to somewhat narrow restrictions, permits a stockholder to sue for the redress of wrongs or frauds upon the corporation may, without violence, be extended to the taxpayers of public corporations, where the wrong is apparent the equity clear, and the officers charged with the duty of protecting the interests of the taxpayers refuse to act.'' 160 Ind., 455, 459, 67 N. E., 103, 105, 63 L. R. A., 133, 135, 136.

The same principles were asserted in *Johnson* v. *Black* 103 Va., 477, 49 S. E., 633, 68 L. R. A., 264, 106 Am. St. Rep., 890, which was an action brought against several members of the board of supervisors to compel the return of money illegally taken by them as compensation for their services.  Other cases in accord are *Cathers* v. *Moores,* 78 Neb., 17, 113 N. W., 119, 14 L. R. A. (N. S.), 302; *Independent School District No. 5* v. *Collins,* 15 Idaho, 335, 98 Pac., 857, 128 Am.

St. Rep., 76; *Walker* v. *Village of Dillonvale,* 82 Ohio
St., 137, 92 N. E., 220, 19 Ann. Cas., 773; and *Wilcox*
v. *Porth,* 154 Wis., 422, 143 N. W., 165; also *Reed* v.
*Cunningham,* 126 Iowa, 304, 101 N. W., 1055. In a
note to *Cathers* v. *Moores,* supra, as reported in 14
L. R. A. (N. S.), 298, most of the cases we have cited,
and several others in accord, may be found briefly
digested. The same principles were applied in this
State in *Finney* v. *Garner,* 110 Tenn., 67, 71 S. W.,
592. We are referred to *State* v. *True,,* 116 Tenn.,
294, 95 S. W., 1028, as an opposing authority. This
is a mistaken conception of that case. It distinctly
approves *Finney* v. *Garner,* supra. The action was
brought to recover of Mr. True, C. G. Holman, and
others, his official sureties, as former chairman of the
county court of Robertson county, and I. N. Dorris
and others, his official sureties as former trustee of the
county, $1,000 and interest thereon, paid Mr. True by
Dorris as trustee out of the funds in his hands held
for the use of the public schools of the county, upon
a warrant issued to Mr. True by C. G. Holman as
chairman of the county court, in payment of a fee
claimed by Mr. True for services rendered under em-
ployment by Mr. Holman, as chairman, in a suit
brought in the name of Robertson county against the
mayor and aldermen of the town of Springfield and
the said I. N. Dorris, as county trustee, for the pur-
pose of preventing a misappropriation of public school
funds then in the hands of the said trustee, arising
from taxes levied and collected in the territorial

boundaries of Springfield, for the maintenance of the public schools. It was held that Holman, as chairman of the county court of Robertson county, had no authority to bring a suit for the county or to employ counsel for any purpose. In reply to the claim that the quarterly county court had approved the action of the chairman, it was said in the opinion that that court had no power to employ counsel and procure a suit to be brought to prevent a misappropriation of the public school funds in the hands of the trustee of the county, and that therefore its order in approving the contract of its chairman in doing so was a nullity; that the public school funds in the hands of trustees of counties are not the property of the counties, and that their authorized agents have no control over them; that this fund does not go into the county treasury, cannot be appropriated by the county authorities to any purpose, and is not subject to the warrant of the chairman of the county court; that the trustee is required to keep it, from whatever source it may be derived, separate and apart from all other county funds in his hands, and that it is made a high misdemeanor for him to use or appropriate it to other or county purposes. It is further held that under certain statutes mentioned the power to bring such suits, appertaining to the school fund, was vested in the State superintendent of public instruction, and that the chairman of the county court had no right to intermeddle with the matter.

State, ex rel., Bonner v. Andrews.

Now as to the matter of a lien for counsel fees and expenses. This point is fully covered by *Kimble et al.* v. *Board of Commissioners of Franklin County*, 32 Ind. App., 377, 66 N. E., 1023, approved in *State* v. *Holt*, 163 Ind., 198, 71 N. E., 653.

The facts in *Kimble* v. *Board, etc.,* so far as it is necessary to state them were these: It appears that prior to the bringing of that suit Kimble and others, composing an organization known as the "Franklin County Taxpayers' League," brought suit as plaintiffs for the use of the board of commissioners of Franklin county, Ind., in the Franklin circuit court, against certain named commissioners for the recovery of the amount of money that had been paid by that board on illegal claims made by the said commissioners named; that the suit resulted in a judgment in favor of the taxpayers for the use and benefit of the said board against the several defendants therein for sundry amounts aggregating quite a large sum; that of these judgments there was paid into the hands of the clerk, and by him paid over to the taxpayers who had brought the suit, the sum of $1939.41; that of this amount the taxpayer plaintiffs aforesaid paid over to the county treasurer $798.91 and retained $1,140.50; this sum being retained by them to pay counsel fees and expenses incurred in the prosecution of the suits referred to. The action was brought by the board of commissioners to recover this sum so retained; the defense was that the sum retained was not more than sufficient to cover the fees and expenses referred to.

The court after approving the principles already discussed in the present opinion, said:

"It is the general rule, without doubt, that trustees and others acting in a fiduciary capacity are entitled to reasonable allowances for costs and expenses incurred in the course of the performance of their duties, out of a fund which has been secured or protected by their efforts. *Woodruff* v. *New York, etc., R. Co.*, 129 N. Y., 27, 29 N. E., 251. In *Trustees* v. *Greenough*, 105 U. S., 527, 26 L. Ed., 1157, it was said to be a general principle that a trust estate must bear the expense of its administration, and that where one having a common interest with others in a trust fund takes, at his own expense, proper proceedings to save it from destruction or to restore it to the purposes of the trust, he is entitled to reimbursement, either out of the fund itself, or by a proportional contribution from those who accept the benefits of his efforts. See *Central R., etc., Co.* v. *Pettus*, 113 U. S., 116, 123, Sup. Ct., 387, 28 L. Ed., 915. In *Fox* v. *Hale, etc., Mining Co.*, 108 Cal., 475, 41 Pac., 328, it was said: 'The action was not prosecuted by the plaintiff in his own right or for his own exclusive benefit. He sued in behalf of the corporation to recover a fund in which others were equally interested, and the judgment in his favor was for the use and benefit of the corporation. He was therefore not entitled to receive the amount of the judgment himself, but was clearly entitled to an allowance out of the moneys collected of his reasonable expenses, including counsel fees.'

. . . . In *Sands* v. *Greely & Co.* (C. C.), 83 Fed., 772, where, pending a receivership an investigation of the accounts of the corporation was conducted by an expert accountant, retained and paid by certain creditors, which investigation resulted in the realization of a large sum for the receivership, it was held that the expense of such investigation would be charged against the fund, and the disbursements of such creditors in that behalf would be paid out of it.''

The court further said:

''It does not appear from the answer that the county, in its corporate name, was made a party to the suits for the recovery of the moneys illegally appropriated; but the county has accepted and appropriated a portion of the avails of those suits, and in the case before us is claiming the remainder of such proceeds. Under the mode of proceeding actually pursued, all the proceeds of the various judgments came into the possession of the appellants. It was the money of the county, and the appellants held it as such. Their actual situation after receiving the moneys was that of persons holding in a fiduciary capacity a fund, to the creation or recovery of which they had contributed by the discoveries and suits instigated by them, as a part of many ultimate *cestuis que trust,* in behalf of all of whom they proceeded. They made report to the county for which they held the fund, claiming reimbursement from it, not for their individual services or 'trouble,' but for their

actual reasonable, and necessary expenses in the re-
covery of the fund.''

The court held that the appellants were entitled to
their fees and expenses, and had the right to retain
a sufficiency for that purpose, but that the county was
not precluded by their report on this subject, and was
entitled to an investigation of each item claimed, with
a view to ascertaining its reasonableness and pro-
priety or the contrary. The court said further:

''The appellees are not precluded as to any portion
of the alleged expenses. Each item is open to investi-
gation, and only such are allowable as shall be proved
to be reasonable and necessary. This is true of attor-
ney's fees, as well as of the other expenses. The
attorneys had a statutory right to enter notice of in-
tention to hold a lien for their fees, but the appellants
can claim as against the appellees only such amount as
may be proved to be reasonable.''

We do not approve the action of the taxpayers in
receiving the money from the clerk, nor do we under-
stand that the Indiana court approved such act; but
the decision was in effect that, being in possession of
the funds, they were entitled to retain, when sued
therefor, a sufficiency to cover counsel fees and other
expenses.

From the various cases cited as well as the text of
Dillon quoted it is apparent that the kind of action
we have under examination is closely assimilated to,
if not practically identical with, those suits in which
minority stockholders sue to recover illegal disburse-

ments made by the governing body, or to enforce rights of action belonging to the corporation which such governing body refuses to bring. The right to a lien for counsel fees in cases of this character was decided in the case of *Grant* v. *Lookout Mt. Co.,* 93 Tenn., 691, 28 S. W., 90, 27 L. R. A., 98. The syllabus of that case sufficiently expresses its substance as follows:

"A corporation is liable for complainants' reasonable attorney's fees, incurred in the successful prosecution of a just and necessary suit by a minority of its stockholders against itself, its officers and directors, for the benefit of the company, to enjoin the fraudulent disposition of its properties, or to recover the properties already fraudulently transferred. And the attorney's fees, in such case, constitute a lien upon the property recovered by the suit."

In opposition to the foregoing views we are referred by counsel for defendants to the cases of *Park* v. *City of Laurens,* 68 S. C., 212, 46 S. E., 1012, and *Milster* v. *Spartanburg,* 68 S. C., 243, 47 S. E., 141. The first of these cases is not in point. It appears that one J. H. Garrison, a resident and taxpayer of the city of Laurens, instituted a suit by which he caused to be collected a large sum of money due the city for taxes which the city authorities had refused to collect. Instead of presenting the claim for attorney's fees in that case, the promise of the mayor of the city was taken, to the effect that, on presentation of a claim before the city authorities, a reasonable fee would be

paid. On this promise a suit was brought by the attorney directly against the city, and it was held that the mayor had no power to bind the city by his promise; furthermore that the facts stated raised no implied promise, or other privity between the complaining attorney and the city. The court, however, added, by way of explanation and to prevent misconception the following:

"To avoid misunderstanding, it may be well to say, the right of Garrison [the taxpayer who had brought the suit to recover taxes] to bring his action for counsel fees and other expenses, on the ground that he made these disbursements in securing a public municipal right which the city council refused to enforce, is not here involved. Such an action would in no wise depend upon any claim by Garrison's attorney to represent the city of Laurens, or its council, such as is alleged in this complaint; but, if it could stand at all, would have to rest on the principle thus laid down in Keener on Quasi Contracts, 341: 'Where an obligation is imposed by law upon a person to do an act, because of the interest which the public has in its performance, it would seem that on the defendant's failure to perform, a person performing the same with the expectation of receiving compensation should be allowed to recover against the defendant.' "

In *Milster* v. *Spartanburg,* supra, it appeared that the attorneys for the petitioners in a case similar to the *Laurens Case* moved for an order of reference to ascertain what fee should be allowed them for the

taxes brought into the city treasury. This motion was denied on two grounds. The first was that the complaining taxpayer who had brought the suit to recover the taxes could not be regarded as the representative of the municipality so as to make his contracts for reasonable counsel fees binding on the city as its representative. The second ground was that the proceeding was one brought to obtain the writ of *man damus*, and that under it no money came into court, but that it was paid directly to the city. The court said:

"The only possible ground on which this claim could be placed is that Abbott and Milster, as citizens and taxpayers, should be regarded as representing the city in a matter of public concern, in which the city council refused to act for the city. Even if their contract for attorney's fees could be regarded as a contract of the city standing on as high ground as if it had been made directly with the city council, payment of the fees could be not adjudged in a *mandamus* proceeding. In such a proceeding the court has no control of the funds after they are paid to the city council. If there is any contract, express or implied, with either of the petitioners, or their attorneys, it can only be enforced by a direct suit against the city."

As to the first ground, we believe the decision is contrary to the great weight of authority, as shown by our previous discussion. As to the second point, it is inapplicable to the $5,000 actually in court in the case before us. It is unnecessary to consider whether

in a *mandamus* proceeding of the kind pending in a
chancery court of this State an order might be prop-
erly made directing the payment into court of a suffi-
ciency of the funds collected to pay expenses and coun-
sel fees, and only the balance into the city treasury.
Such an order was applied for in the chancery court,
denied there, and the action of the chancery court sub-
sequently affirmed by the court of civil appeals; but
that phase of the matter was not brought to this court.
Therefore we do not consider it.

It is urged by counsel for the city that no part of
the $5,000 should be appropriated to the payment of
expenses and counsel fees, since it has been held in
this State that the property of a municipality in actual
use for public purposes cannot be levied on for its
debt, and that moneys due it cannot be garnisheed.
It is furthermore objected that the taxes or funds
belonging to such corporation cannot be interrupted in
their course to the treasury, and this proposition, as
a general one is supported by authority. However,
these principles do not apply to the exceptional situa-
tion that occurs when the city authorities refuse to
take steps to recover or collect claims belonging to
the city outstanding in the hands of other persons.
The city authorities are trustees for all of the cor-
porators. When these trustees refuse to act and the
*cestuis que trust* supply the public need by taking
proper action to realize the trust funds, they are en-
titled out of the fund to receive their reasonable coun-
sel fees and expenses, incurred in and about the

matter, as in the case of other trust funds. There should only go into the treasury what is left after such reasonable deductions. These deductions are a ·charge attaching to the fund, and should be made in the case in which the fund is realized. It is a useless thing, as it seems to us, as well as unjust, to turn the parties away who have been instrumental in supplying the lack caused by the breach of duty on the part of the city authorities, and remit to them a right of action against the city based on an implied *assumpsit*. As to the point made that the funds due a city should not be interrupted in their course from the city's debtor to the city's treasury, it must be remembered that in cases like the present such funds would never begin their course to the treasury but for the activity of persons occupying similar relations to the taxpayers, who in this case are asking for their counsel fees and expenses.

It is insisted by counsel for the city that if claims of the kind put forward in the case before us are recognized, the effect upon cities will be very disastrous, because, it is said speculative suits will be brought for the purpose of realizing fees. Suits of this character have not had the effect suggested when applied to private corporations, and there is no reason to apprehend any different results in respect of municipal corporations. Moreover, as was said by Mr. Justice Field in *Crampton* v. *Zabriskie,* 101 U. S., 601, 609 (25 L. Ed., 1070):

''The courts may be safely trusted to prevent the abuse of their process in such cases.''

And we may properly quote on this same phase of the matter what is said by Judge Dillon in his great work on Municipal Corporations:

''There is no doubt but that the corporation may in its own name bring suits, in proper cases, to be relieved against illegal, unauthorized, or fraudulent acts on the part of its officers. Since, however, experience has shown how liable these corporations are to be betrayed by those who have the temporary management of their concerns, it would never do, we think, for the courts to hold that relief against illegal or wrongful acts can be had only by an authorized suit brought by and in the name of the corporation.'' Id. (5th Ed.), sec. 1586.

It results that the decree of the court of civil appeals on this branch of the case, remanding the cause to the chancery court for an account of fees and expenses and the payment thereof out of funds in court, or that may be hereafter brought into court, must be affirmed.

There is another branch of the case which will now be considered.

As stated, the bill was filed by the State on relation of certain taxpayers, for the purpose of obtaining a *mandamus* to compel the collection of privilege taxes, alleged to be due the city of Nashville, which the said city refused to collect, although it was in law bound thereto. Such proceedings were had as that the comp-

131 Tenn. 37

troller of the city was ordered to assess a large number of persons alleged to have been exercising the privilege referred to.   Among these persons were C. C. Waggoner, The Ocean, and M. H. Skalowski.   As to these persons a *scire facias* was awarded bringing them before the court to show cause, if any they had, why they should not pay these taxes.   They answered the writs, denying liability, and evidence was taken. The result was that the chancellor held that the first named was not liable, but that The Ocean and Skalowski were each liable, and judgments were rendered in favor of the complainant for the use and benefit of the city of Nashville against these latter two for the privilege tax claimed to be due.   They both appealed to the court of civil appeals.   The complainant appealed to that court from the decree as to Waggoner.   In the court of civil appeals the chancellor's decree was reversed as to Skalowski and The Ocean, and they were discharged; while that court hold Waggoner liable, thus likewise reversing the chancellor. All of the parties have brought the case to this court by their several writs of *certiorari* obtained on petitions filed.

It is objected in behalf of all three of the parties mentioned that there can be no recovery against them because there was no record on which the writ of *scire facias* could properly issue in the chancery court.   We are constrained to hold this contention sound.

A privilege tax is a debt, and may be sued on as such.   *State* v. *Nashville Sav. Bank,* 84 Tenn. (16 Lea);

111. Such a tax levied by statute, either upon a percentage basis or for a fixed sum, may be sued for as a debt by the State and county, and, we may add, also by a municipality, though there has been no other assessment than that made by the statute. *State & Davidson County* v. *Hirsch Bros.,* 84 Tenn. (16 Lea), 40. In the case of other kinds of taxes an assessment is necessary, where a valuation of property must be made to fix the amount. *Union & Planters' Bank* v. *Memphis,* 101 Tenn., 154, 46 S. W., 557. A tax when assessed creates a personal debt in favor of the government against the person whose property is assessed. *Mayor & Aldermen of Jonesboro* v. *McKee,* 10 Tenn. (2 Yerg.), 167; *Rutledge* v. *Fogg,* 43 Tenn. (3 Cold), 554, 568, 569, 91 Am. Dec., 299; *State* v. *Duncan,* 71 Tenn. (3 Lea), 680; *State* v. *Railroad Co.,* 82 Tenn. (14 Lea), 56, 62; *Nashville* v. *Cowan,* 78 Tenn. (10 Lea), 209; *E. T. V. & G. R. Co.* v. *Morristown,* (Tenn. Ch. App.), 35 S. W., 771.

It is apparent, therefore, that without an assessment the complainants could have brought before the court the city of Nashville and all the parties exercising the privilege complained of, and have obtained a judgment directly against such parties for the use of the city. It is also apparent that upon bringing the assessment officer before the court and causing assessment to be made, the complainants could then have amended their bill so as to bring the taxpayers before the court directly, and in that form they could have obtained judgment in their name in favor of the

city.   Likewise they could have, under order of the court, caused distress warrants to issue for the immediate collection of the tax.   Again, they could properly follow the method pursued in the present case; that is, on obtaining an assessment they could have caused a *scire facias* to issue for the parties to show cause why they should not be held liable, or rather why the distress warrants should not issue.. This course is desirable where it is apprehended that the tax may be contested, or it is believed there may be some reasonable ground for failure to pay.

However, if the method of *scire facias* be adopted, the practice must conform to the requirements of that proceeding.   The writ of *scire facias* is always awarded by the court, and is both a writ and a pleading, likened sometimes to a declaration. *State v. Johnson,* 65 Tenn. (6 Baxt.), 198, 199; *State v. Patterson,* 66 Tenn. (7 Baxt.), 246.   It has been likened also to a bill in chancery.   8 Bacon, Abridg., 620.   It is also called in a general way an action. *Gregory v. Chadwell,* 43 Tenn. (3 Cold.), 390.   But a *scire facias* must be based upon some matter of record, as a judgment, bond, or some entry or suggestion of record. *Gregory v. Chadwell,* supra; *Frierson, Adm'r, v. Heirs of Harris,* 45 Tenn. (5 Cold.), 146, 94 Am. Dec., 220; *Martin, qui tam, v. Gorden,* 4 Tenn. (3 Hayw.), 173. It may be tested by demurrer, or if fatally defective by writ of error or appeal. *Hayes v. Cartwright,* 74 Tenn. (6 Lea), 139, 143, 144.

In our judgment the writs of *scire facias* against the three parties mentioned in the present case are fatally defective because they are not based upon any proper entry of record. That is to say, in the aspect of the case before us, they could only have been based upon an assessment. But the assessments are void because they do not show the amount due. They contain figures and ruled columns, but no dollar marks. This is fatal. *Thompson* v. *Evans,* 2 Tenn. Ch. App., 61, 71; *Dunn* v. *Dunn,* 99 Tenn. (15 Pickle), 598, 42 S. W., 259; *Hamilton* v. *Brownsville Gaslight Co.,* 115 Tenn. (7 Cates), 150, 90 S. W., 159; *Barnes* v. *Brown,* 1 Tenn. Ch. App., 726. An assessment is not strictly a judgment, but ascertains the amount due, at least provisionally, and may well be the basis of a *scire facias.* But when the assessment is wholly void the *scire facias* has nothing to rest on, and is itself necessarily void. This is apparent from the form of judgment that must be entered, which is for the issuance of an execution on the judgment on which the writ was based, and not a new judgment in favor of the plaintiff in the said former judgment. *Payton* v. *Stuart & Looney,* 7 Tenn. (Peck), 156, 158; *McIntosh* v. *Paul,* 74 Tenn. (6 Lea), 45, 47; *Rogers* v. *Hollingsworth,* 95 Tenn. (11 Pickle), 357, 359, 360, 32 S. W., 197. But if this were the only trouble, the matter could be remedied in this court. Since, however, there can be no judgment under which the writs could issue, there can be no order or decree here for the issuance of an execution.

For the deficiencies thus indicated, the proceedings against the three parties named must be dismissed, at the costs of the complainant relators.

We have carefully read all the evidence adduced for and against each of the three persons or parties named, and it must not be understood that we concur in the opinion of the court of civil appeals on the ground on which they discharged The Ocean and Skalowski. Neither do we say that they would be liable under these facts. We simply do not pass on the facts; nor do we pass on the facts as to Waggoner.